# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOE BURGOS VEGA,  :
       Plaintiff,  :
               :
    v.  :                CASE NO. 3:09-cv-737 (VLB)
               :
M. JODI RELL, et al.,  :
       Defendants.  :           June 21, 2011

## RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. #76]

The plaintiff, currently incarcerated at Cheshire Correctional Institution, has filed an action *pro se* under 42 U.S.C. §§ 1983, 1985 and 1986; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201 et seq.; and the Religious Land Use and Institutionalized Persons Act "RLUIPA"), 42 U.S.C. § 2000cc et seq. In his amended complaint, filed on February 11, 2010, he asserts thirty-two causes of action and names thirty defendants: Mary Jodi Rell; Richard Blumenthal; Theresa Lantz; Mary M. Marcial; Anthony J. Bruno; Abdul Majid Karim Hasan; Wayne T. Choinski; Michael Bibbons; Frederick Levesque; John Sieminski; Peter Murphy; Richard Furey; Thomas Thalody; Rene Keida; Alfredo Gonzalez; Michael Beaudry; Captain Frey; Captain Donahue; Dr. Silvis; Lieutenant Silver; Andrew Johnson; Lieutenant Allen; Maureen Allen; Correctional Officer Sanchez; Gary Trowers; Clifford Madison; Correctional Officer Arzt; Correctional Officer Sharon; James Dzurenda; and Neil Cormier.

The defendants have filed a motion to dismiss the amended complaint. For the reasons that follow, the defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202,

213-14, 216 (2d Cir. 2008).

## II. Facts

The prolix amended complaint appears to include a day-by-day recitation of incidents in the plaintiff's prison life, a summary of which follows.

A.    <u>Loss and Purchase of Property</u>

In July 2005, the plaintiff sought and was granted permission to purchase a silver Islamic ring and oils.  In September 2005, the plaintiff's family mailed the ring and oils to defendant Gonzalez, who inventoried the items and gave them to the plaintiff.  Am. Compl., Doc. #51, ¶¶ 52-57.  On January 27, 2006, defendant Gonzalez confiscated the ring allegedly because the plaintiff complained about defendant Gonzalez.  Am. Compl., ¶¶ 91-92.  The plaintiff wrote to Assistant Attorney General Steven Strom about the confiscation of his ring.  In response, the Department of Correction conducted an investigation.  During the first week of March 2009, defendant Donahue spoke with the plaintiff.  On March 9, 2006, defendant Donahue issued the plaintiff a disciplinary report for giving false information to defendant Gonzalez.  The plaintiff again complained to AAG Strom and, subsequently, was found not guilty of the charge at a disciplinary hearing. Am. Compl., ¶¶ 95-105.  The ring was not returned to the plaintiff and all grievances seeking its return were denied.  On January 5, 2007, defendant Sieminski stated that the ring would remain in storage while the plaintiff was confined at MacDougall-Walker Correctional Center.  Am. Compl., ¶¶ 221-27, 233. When the plaintiff was transferred to another correctional facility in 2008, the ring

3

was not sent with his property and the plaintiff was told that the ring had been sent out of the facility. Am. Compl., ¶ 491.

The Department of Correction has a contract with Music by Mail to enable inmates to purchase a variety of CD's. Only the Rap CD's are edited. On December 4, 2007, defendant Bruno denied the plaintiff permission to purchase Islamic religious CD's from an Islamic vendor. The plaintiff's grievance was denied. Am. Compl., ¶¶ 341-43, 380, 390, 457.

On January 7, 2008, the plaintiff sent an inmate request regarding his boots to defendant Beaudry. Defendant Beaudry responded that he had not been told that the boots had arrived. Defendant Beaudry indicated that some time previously boots had been sent back because they were the wrong color, but defendant Arzt confirmed that no boots had arrived for the plaintiff since November. The boots were re-sent in defendant Beaudry's name and arrived at the facility. The plaintiff was told that they would be approved if they did not contain metal shanks. Am. Compl., ¶¶ 376, 379, 381, 388.

On February 19, 2008, the plaintiff sent an inmate request to Correctional Officer Vadnais regarding his boots. Correctional Officer Vadnais said that defendant Arzt had the boots, but had not screened them yet. On March 11, 2008, the plaintiff sent Correctional Officer Vadnais a reminder about his boots. The following day, Correctional Officer Vadnais said that defendant Arzt would contact the plaintiff if there were a problem with the boots. On March 16, 2008, the plaintiff wrote to defendant Arzt. Defendant Arzt stated that the boots had metal supports

that could not be removed and directed the plaintiff to provide an address to mail out the boots.  The plaintiff states that the boots did not have metal supports.  Am. Compl., ¶¶ 396-97, 399-402, 404-05, 408.

On April 17, 2008, defendant Bruno denied permission for the plaintiff to purchase a digital copy of the Quran.  His grievances were denied.  Am. Compl., ¶¶ 410, 423-25, 449, 489.

On July 24, 2008, following his transfer to Garner Correctional Institution ("Garner"), the plaintiff received some, but not all, of his property.  He discovered that Garner property officers, who are not defendants in this case, had damaged his "boom box" radio.  The plaintiff was told that he could purchase a new radio at his own expense.  His lost property claims were denied.  Am. Compl., ¶¶ 485-88, 504, 510, 512-13.

B.    Religious Practice

On January 12, 2006, the day of the Eid-Ul-Adha feast, defendant Bruno told the plaintiff and other Muslim inmates at the MacDougall-Walker Correctional Center that no donated or purchased Halal foods would be allowed at the feast.  Although religion required Halal meat from a camel, cow, sheep or goat, and the Islamic chaplain at MacDougall-Walker Correctional Center ("MacDougall-Walker") recommended its inclusion, no such meat was included in the meal.  Instead, on the recommendation of defendant Hasan, the Muslim inmates received breaded fish at the feast.  Am. Compl., ¶¶ 60-71.

Inmates in Q-unit are not permitted to attend congregate Islamic Jumah

services.  All other religious groups are provided congregate weekly services and Native American inmates are permitted to smudge daily.  The plaintiff notified defendants Frey, Bruno, Lantz, Hasan, Marcial, Sieminski and Keida of the lack of congregate services and the probable denial of prayers and feast for Eid-al-Fitr.  In response to his complaints, defendant Keida told defendant Bruno that the plaintiff should have been sent to Cheshire Correctional Institution where he would have had access to more religious services than are available in the expansion units.  In October 2006, the plaintiff received a regular common fare tray and not a feast for Eid-al- Fitr, even though he had no disqualifications that would have prevented his participation in the feast.  Defendant Bruno rejected the plaintiff's grievance regarding congregate services.  Am. Compl., ¶¶ 181-204, 285.

On August 10, 2007, the plaintiff informed the defendants about a bad odor and filth on the Islamic prayer services rug.  He asked to have the rugs cleaned or vacuumed and sprayed with perfume, to have air freshener available in the commissary and to permit inmates to burn incense.  Correctional officers are permitted to have air freshener and Native Americans can burn tobacco.  The plaintiff's request was denied.  Am. Compl., ¶¶ 301-305, 313, 320, 324, 333.

The defendants do not inform Muslim inmates of the Islamic calendar dates. On December 19, 2007, the plaintiff learned that it was Eid-Ul-Adha.  He was served breaded fish, which has no religious significance, for the feast even though the Islamic community was willing to donate Islamic food for the feast.  The plaintiff filed a grievance and suggested the creation of a fund accepting outside

contributions to defray the cost of food for Islamic feasts. The proposal was rejected. On December 22, 2007, a Muslim correctional officer told the plaintiff that no Muslim volunteers were allowed from his mosque and from other mosques. Am. Compl., ¶¶ 346-54, 384.

On May 18, 2008, the plaintiff learned that congregate religious services for Muslims were offered only once every five or six weeks. Other religions had weekly services. On May 23, 2008, the plaintiff wrote to defendant Keida seeking weekly congregate services. He asked permission to attend Taleem and Jumah with other general population inmates in the main building. Am. Compl., ¶¶ 442-46, 490.

At Garner, a separation profile on his record prevented any contact between the plaintiff and inmate Gaines. As a result, the plaintiff was unable to attend congregate religious services or Islamic studies for two months. The plaintiff did not receive daily outdoor exercise, participate in programs or work at a prison job. Although the plaintiff was told by several correctional employees about the separation profile, defendant Dzurenda denied his grievance and told the plaintiff that there was not separation profile on his record. Rather, the plaintiff was being kept apart from others transferred at the same time because the transfers were in response to information that a disturbance had been planned at MacDougall-Walker. Am. Compl., ¶¶ 492-96, 499-503, 507.

C.    Dental Treatment

On January 13, 2006, defendant dentist Thalody performed dental work on

the plaintiff's lower right jaw and insisted, over the plaintiff's objection, on filling a cavity. As a result, the plaintiff suffered severe jaw pain and could not eat or open his jaw for two months. Requests for dental treatment or pain treatment submitted to the medical department and to defendant Gonzalez were ignored. On January 27, 2006, defendant Thalody saw the plaintiff and on the same day, defendant Dr. Silvis ordered x-rays and a muscle relaxant. Am. Compl., ¶¶ 77-90. In July or August 2006, the plaintiff experienced problems with the tooth that defendant Thalody had filled and again experienced pain and jaw problems. Am. Compl. ¶ 94.

### D. Holiday Food Package / Halal Food

At the end of March 2006, the plaintiff was not permitted to order a once-per-year holiday food package. All religious denominations except Muslims were permitted to order holiday packages. The holiday food package is an inmate's only opportunity to order religious food items not sold in the commissary. The plaintiff complained directly to defendant Keida but received no response. In addition, the plaintiff's complaint to the Islamic chaplain was forward to defendant Keida, again without response. Defendant Sieminski denied the plaintiff's grievance seeking permission to order a holiday package. Am. Compl. ¶¶ 107-13.

All foods on the common fare menu must be Kosher-certified and Islamic-acceptable. During a deposition conducted in the plaintiff's other federal case, the defendants indicated that cheese used in the common fare meals was not Kosher or Halal. The plaintiff confirmed this information by obtaining a cheese wrapper.

8

Defendant Murphy denied the plaintiff's grievance. He stated that the cheese issue was being litigated in the plaintiff's other federal case and allowed the non-Halal cheese to continue being served. Am. Compl., ¶¶ 316-18, 321-22, 338.

The plaintiff complained that there were no separate food service facilities for common fare meals at Garner, thereby cross-contaminating the food. In response, on September 16, 2008, defendant Dzurenda agreed to use different colored food trays for common fare meals. Am. Compl., ¶¶ 498, 506, 508.

E.    Disciplinary Reports

On April 12, 2006, defendant Sharon issued the plaintiff a disciplinary report for using a cleaning solution in a spray bottle, even though another correctional officer authorized the use. Defendant Sharon disregarded this explanation and called the plaintiff a "legal beagle." The plaintiff was found not guilty at a disciplinary hearing. Am. Compl. ¶¶ 114-19.

The plaintiff filed grievances to permit him to store cleaning supplies in his cell. The grievance was upheld for the duration of time that the plaintiff was housed with his current cellmate. The plaintiff states that blood is everywhere in the facility and that he constantly is exposed to HIV, Hepatitis C and MRSA. He is not given new uniforms and linens and the Department of Correction no longer cleans surfaces with bleach. Am. Compl. ¶¶ 123-28.

On September 10, 2006, the plaintiff was attacked by his cellmate, inmate Necaise. Defendant Madison did not investigate the yelling and fighting. On September 11, 2006, the plaintiff was attacked again. He suffered cuts on his left

eye, bruises on his face, cuts and scratches and an injury to his hip. In addition, the fight exacerbated the plaintiff's back problems. Following the attack, the psychiatric staff diagnosed the plaintiff as suffering from post traumatic stress disorder ("PTSD"). Since the attack, the plaintiff cannot fall asleep normally. He is startled by any sudden movement or noise made by his cellmate. These problems are worse when he is double-celled. The plaintiff requested a single cell, but was denied even though other inmates suffering from PTSD have single cells. Am. Compl., ¶¶ 135-46.

Prior to the attacks, inmate Necaise told correctional staff that he wanted to be moved to a different cell. When they ignored his request, he attacked the plaintiff. Following the second attack, the plaintiff was issued two disciplinary reports, one for fighting, the other for possession of contraband, and was sent to segregation. An eye-witness and inmate Necaise contradicted the charge that the plaintiff was fighting. In addition, the alleged contraband, a razor, was found under inmate Necaise's televison and belonged to inmate Necaise. Am. Compl., ¶¶ 149-54.

The disciplinary hearings were not held within seven days as required by Administrative Directive 9.5. The defendants withheld exculpatory evidence that would have shown that the disciplinary reports were issued in retaliation for the plaintiff's religious beliefs and litigation activities. Defendant Maureen Allen denied the plaintiff's request that defendants Madison and Sanchez testify as witnesses because the reports they wrote were already in evidence. The plaintiff

was found guilty of both charges. Defendant Allen said that the razor was found in a common area, but that term is not defined in the directives. The plaintiff disputes that determination and argues that inmate Necaise's television is his personal property and not a common area. The plaintiff also states that he was entitled to defend himself and that the razor belonged to inmate Necaise. Also, the plaintiff contends that the hearing officer failed to specify the evidence relied upon in his report. As a result of the guilty findings, the plaintiff lost contact visits for two years and was kept in punitive segregation longer than the number of days sanctioned. He was released to Q-unit during Ramadan. Am. Compl., ¶¶ 157-78.

Correctional regulations do not prohibit seeking donations. The plaintiff wrote a letter requesting that religious oils be donated to the religious department for use by Muslim inmates. Defendant Arzt opened the letter and misinterpreted the request as seeking donations for the plaintiff himself. On April 22, 2008, defendant Arzt issued a disciplinary report for conspiracy to convey contraband. The plaintiff met with an advocate and requested witnesses. He asked that Maureen Allen be removed as the investigator because she was not impartial. Defendant Hearing Officer Cormier denied the request, refused to permit the plaintiff to introduce exculpatory evidence and did not give him copies of witness statements in time to prepare argument against the false statements. Defendant Cormier would not read the letter before finding the plaintiff guilty. Although he had been charged with a class B infraction, he was sanctioned with punitive segregation. Another inmate told the plaintiff that defendant Maureen Allen had

encouraged defendant Cormier to find the plaintiff guilty because she did not like him.  Am. Compl., ¶¶ 412-18, 422, 426-35.

### F.    Commissary Items

On April 14, 2006, the Islamic chaplain told the plaintiff that meat was an essential part of the Eid-Ul-Adha meal, it was essential to make congregate prayers, a Muslim cannot claim to be a vegetarian without medical reasons and that the oils sold in the commissary were not atars.  The plaintiff filed a grievance regarding the commissary items.  Defendant Choinski denied the grievance appeal and noted that over forty items in the commissary met Halal requirements.  Am. Compl. ¶¶ 120-21.

The commissary advertised Jolly Rancher and Starlite Mint candies as Halal.  On August 20, 2007, the plaintiff learned that the candy was not Halal.  Defendant Murphy denied his grievances regarding this issue.  Am. Compl., ¶¶ 306-12, 332.

In October 2007, the plaintiff discovered that the commissary marked up items 30%.  In addition, changes were implemented regarding restitution payments.  These increases came while prison pay was reduced to 75¢ per day.  Am. Compl., ¶¶ 325-29, 339.

### G.    Conditions of Confinement

Prison rules prohibit inmates housed in Q-unit from exercising in the unit's common indoor area.  While he was confined in Q-unit, the plaintiff was not given one hour per day of outdoor exercise.  Inmates in restrictive housing and the main

building housing units were provided outdoor exercise.  Am. Compl., ¶¶216-18.

In 2008, the plaintiff was confined in punitive segregation for a short time. The punitive segregation cell was smeared with feces and the toilet was broken. The plaintiff requested another cell but received no response.  He was denied cleaning supplies and had to remain in the filthy cell for ten days.  The conditions in the cell interfered with the plaintiff's religious worship.  Am. Compl., ¶¶ 436-38, 441.

### H.  Medical Treatment

The plaintiff suffers from several medical conditions including mid and lower back complications, a slipped disc and pain in his hips, knees, legs and feet. At times, his left leg becomes numb.  Defendant Sieminski authorized the plaintiff to have a chair in his cell.  No one told the plaintiff that he had a slipped disc.  He learned it from reading his medical records.  The plaintiff has not been afforded special medical treatment including an MRI, chronic pain medication, a single cell in general population, a theropedic mattress, bottom bunk status, a back brace, a cane and special shoes.  In late March 2007, defendant Silvis requested an MRI. The request was denied.  Defendant Furey has denied the plaintiff's medical grievances.  The plaintiff's pain medication was discontinued for over six months. Defendants Furey and Silvis ignored the plaintiff's in-person complaints, written requests and grievances.  Am. Compl., ¶¶ 228-32, 234-38, 289, 319.  In January 2009, Dr. Castro told the plaintiff that he wanted to prescribe the items that had previously been denied, but could not go against the prior denials of these items

in the plaintiff's medical records.  Am. Compl., ¶ 521.

On October 17, 2007, the plaintiff requested a refill of his pain medication. He was told that there was no order for pain medication on file and to sign up for sick call.  Although he filled out a request, he was not called to sick call the next day.  The plaintiff filed a grievance on this issue.  Am. Compl., ¶¶ 334-35.

On January 31, 2008, x-rays were taken and a doctor prescribed pain medication.  The doctor ignored the plaintiff's foot fungus as defendants Silvis and Furey had for more than a year.  On April 18, 2008, defendant Silvis questioned the plaintiff regarding notations in the medical records that the plaintiff refused medication.  The plaintiff stated that the notations were not true; defendant Furey had been denying him medication for a year.  Defendant Silvis told the plaintiff that the records indicated that the medical staff had refused to deliver the medication because they though it was psychiatric medication. Defendant Silvis re-prescribed the medication and recommended examination by a podiatrist and evaluation for special shoes.  In January 2009, the plaintiff filed a grievance because defendant Silvis had prescribed psychotic medication.  Am. Compl., ¶¶ 391, 411, 520.

In May 2008, the plaintiff requested renewal of his bottom bunk pass.  On May 26, 2008, he was told that if he had not heard anything, he should assume that defendant Silvis had denied the pass.  The plaintiff's grievance for re-issuance of the bottom bunk pass was denied.  Am. Compl., ¶¶ 447-48, 453.

I.      Harassment / Retaliation

On August 1, 2007, the plaintiff filed a grievance alleging retaliation against Islamic inmates and chaplains who disagree with defendant Hasan.  Shortly after the plaintiff filed this grievance, defendant Beaudry entered the Islamic study classes and Jumah service with dogs, harassing the plaintiff and all others present with hateful looks and expressions.  Defendants Keida, Bruno, Lantz and Peter Murphy reduced Islamic services throughout the Department of Correction while increasing Christian and other non-Islamic services.  They refused to permit Islamic volunteers even though the Islamic chaplain at the Hartford Seminary offered free services for Jumah, Salat, Taleem and Islamic feasts.  At the time the amended complaint was filed, there were fewer than five Islamic volunteers while there were more than 150 Christian volunteers.  Am. Compl., ¶¶ 292-300.

On December 28, 2007, defendant Teller entered the room right after the conclusion of the Jumah service.  He walked on the prayer rug, spoke with foul and vulgar language and expelled gas, deliberately disrespecting the plaintiff and all other Muslims in the room.  The plaintiff reported the incident to the warden. Am. Compl., ¶¶ 358-60.

On January 12, 2008, a few days after the plaintiff complained about defendant Trower's actions involving a search of the plaintiff's mother, defendant Trowers identified the plaintiff to other correctional officers and began showing up wherever the plaintiff happened to be.  On February 3, 2008, defendant Trowers came to the cell door and began yelling at the plaintiff.  Trowers appeared to be

stalking the plaintiff, always trying to harass or provoke him. On February 13, 2008, defendant Trowers followed the plaintiff to the dining hall and made a threatening comment. Am. Compl., ¶¶ 382-83, 392-93, 395.

On February 6, 2008, defendant Arzt gave the plaintiff a urine-screening test. The plaintiff was given another urine test on July 6, 2008. Am. Compl., ¶¶ 394, 459.

On July 16, 2008, defendant Beaudry summoned the plaintiff to the Unit Manager's office. Defendant Beaudry questioned the plaintiff about a letter to the Commissioner demanding a black Islamic chaplain. The plaintiff denied any knowledge of the letter. Am. Compl., ¶¶ 460-63.

On July 16, 2008, at 6:15 p.m., the plaintiff and his cellmate were escorted to the gym by correctional officers with dogs. When he returned to his cell at 9:00 p.m., the plaintiff discovered that his cell had been searched and four boxes of his legal papers were scattered about the cell. Many of his religious texts were damaged in the search. When the plaintiff complained to defendant Gonzalez, he was told to "deal with it." Am. Compl., ¶¶ 467-70. On July 21, 2008, defendant Trowers was present in the plaintiff's housing unit when his cell was searched again. The following day, the plaintiff's cell was searched a third time and he was transferred to Garner. Am. Compl., ¶¶ 471-74.

The plaintiff was not provided a hearing before being transferred to Garner, a mental health facility, against his will. Upon his arrival, he was given a hard time and slapped by the intake officers. While in a holding cell, many correctional officers who are defendants in another of the plaintiff's cases came to look at him.

**16**

Am. Compl., ¶¶ 476-483.

J.    Search of Mother

On January 5, 2008, the plaintiff reported to the visiting room to find his mother crying. She told him that defendant Trowers made her remove her bra because it set off the metal detector. Defendant Lieutenant Allen denied the incident occurred without reviewing the video footage and yelled at the plaintiff for reporting the incident. The plaintiff's mother told Lieutenant Allen that she wanted to file a complaint. Later during the visit, defendant Trowers entered the visiting room and ordered the plaintiff to hand over his ID card. Late that evening, the plaintiff was called to Lieutenant Allen's office. The Lieutenant was conciliatory because proper procedures had not been followed regarding the removal of clothing. On January 7, 2008, defendant Brian K. Murphy, defendant Peter Murphy and Counselor Paskins toured the plaintiff's housing unit. The plaintiff reported the incident with his mother and defendant Brian Murphy stated that he would send someone to speak with the plaintiff. Counselor Paskins asked the plaintiff to put his complaint in writing and she would forward it to the captain. The plaintiff also filed a grievance which was denied. Am. Compl., ¶¶ 361-74, 378, 387.

K.    Miscellaneous Claims

The plaintiff alleges that the Office of the Public Defender is inadequate to represent criminal defendants in Connecticut. Defendant Rell is aware of the deficiencies. In March 2007, the plaintiff was unable to file a state habeas petition challenging the racial disparity in the Connecticut judicial system and inadequate

representation of criminal defendants because the state court would not accept his motion to proceed *in forma pauperis*. There also are racial disparities in the prison population. The plaintiff also challenges problems in his own state criminal trial. The plaintiff wrote to state agencies regarding racial disparity in prison and sentencing but did not receive a response. Am. Compl., ¶¶ 258, 259-63, 267-79, 409.

### III. Discussion

In the amended complaint, the plaintiff asserts thirty-two causes of action relating to the following incidents: (1) the plaintiff was falsely issued a disciplinary report to deprive him of his Islamic ring; (2) the plaintiff was denied authorization to purchase a holiday food package containing Halal food items while other religious denominations were permitted to purchase holiday packages; (3) the plaintiff was denied permission and materials to clean his cell, thereby exposing him to highly contagious diseases; (4) the plaintiff was not permitted to purchase Islamic religious items including a digital Quran, educational Islamic CD's, perfumed incense, leather socks, Halal-certified toiletries, a Qiblah compass, Ashan Five Daily Essential Prayers, an alarm clock and a silver ring; (5) the plaintiff was issued and found guilty of a retaliatory disciplinary report for fighting when the defendants knew that he was only defending himself; (6) the plaintiff was found guilty of possessing contraband with no evidence of his guilt; (7) disciplinary findings were not impartial; (8) the plaintiff was not able to participate in the Eid-Al-Fitr feast while confined in Q-unit; (9) the

plaintiff was denied participation in the Eid-Ul-Adha feast and prayer; (10) in violation of department policy, the plaintiff's silver Islamic ring was not returned after he was exonerated from the disciplinary report which had led to its confiscation; (11) the defendants denied or delayed the plaintiff's access to medical care, prescribed medication and items needed to accommodate his injuries; (12) there is racial disparity in the state judicial system; (13) the defendants conspired to charge and find the plaintiff guilty of two disciplinary infractions; (14) the defendants falsely identified several commissary items as Halal; (15) the defendants continued to serve non-Kosher, non-Halal cheese on the common fare menu after this fact was brought to their attention; (16) items in the commissary have a 30% mark-up and inmates are charged sales tax and subjected to a 10% deduction of monetary deposits; (17) the plaintiff's mother was subjected to an upper body strip search as a condition precedent to visiting him in prison; (18) the defendants opened one of the plaintiff's out-going letters and misinterpreted the letter resulting in disciplinary charges; (19) the plaintiff received a disciplinary report for attempting to convey contraband; (20) after being found guilty, the plaintiff was housed in a cell smeared with feces and was not given another cell even though it violated his religious beliefs to pray in such an environment; (21) the defendants did not clean the prayer rugs or room where religious services were held; (22) the plaintiff was subjected to a retaliatory transfer to Garner Correctional Institution where a separation profile caused him to be denied congregate religious services for 2½ months; (23) prison records

contained inaccurate information; (24) the plaintiff involuntarily received psychiatric medication; (25) the defendants authorized the plaintiff to replace a broken watch then withdrew permission without notifying him and authorized the plaintiff to purchase replacement boots but did not allow him to keep the boots; (26) the defendants broke the plaintiff's radio; (27) the commissary sold falsely advertised Musk oils; (28) the institutional dentist damaged the plaintiff's mouth and jaw; (29) the defendants refused to permit him to file a state habeas petition; (30) the defendants have banned freedom of expression in rap music by only permitting purchase of edited music; (31) the defendants have not complied with the Uniform Administrative Procedures Act ("UAPA") in adopting administrative directives; and (32) the plaintiff was denied congregate religious services when confined in expansion units (Q, N, O, P) at MacDougall-Walker Correctional Center. The plaintiff does not indicate which defendants are involved in each cause of action. Thus, in reviewing the amended complaint, the court must determine which factual allegations relate to each cause of action.

The defendants move to dismiss the complaint on fifteen grounds. First, the defendants contend that this action and, especially, all of the religious claims, is barred by a prior pending federal action, *Vega v. Lantz*, 3:04cv1215(DFM). Second, many of the claims are barred by res judicata or collateral estoppel. Third, the defendants argue that any claims against them for damages in their official capacity are barred by the Eleventh Amendment. Fourth, lost property claims are not cognizable under section 1983. Fifth, any claims regarding

disciplinary reports are barred by *Sandin v. Connor*, 515 U.S. 472 (1995). Sixth, the plaintiff lacks standing to assert any claim on behalf of his mother regarding the alleged search. Seventh, claims for verbal harassment are not cognizable under section 1983. Eighth, the defendants were not deliberately indifferent to the plaintiff's medical needs. Ninth, all conclusory claims of retaliation must be dismissed. Tenth, all claims for monetary damages are barred by qualified immunity. Eleventh, the defendants, including Rell, cannot be sued under a theory of respondeat superior. Twelfth, service has not been effected on several defendants. Thirteenth, defendant Attorney General Blumenthal is protected by absolute immunity. Fourteenth, any claims for violation of the UAPA are frivolous. Fifteenth, the plaintiff's section 1985 conspiracy claims are baseless. The defendants argue that the entire amended complaint should be dismissed but seek leave to file a second motion to dismiss any surviving claims.

    A.    <u>Preliminary Matters</u>

In the amended complaint, the plaintiff includes a jurisdictional statement specifying that this action is brought only for violation of federal laws and constitutional rights. In his causes of action, however, the plaintiff states generally that the defendants' actions violated state law and the state constitution. The plaintiff is not a novice litigant. Although he has filed only three lawsuits in federal court, he has extensively litigated those cases and demonstrated a good understanding of federal law. Thus, because the plaintiff brings this action only for violation of federal law, the court will consider the references to state law only

to the extent that a state law violation would give rise to a Fourteenth Amendment due process violation.

In addition, all of the causes of action begin with conclusory language that the defendants intentionally and systematically discriminated, conspired or retaliated against the plaintiff. This conclusory language is insufficient to state a claim for retaliation or conspiracy. *See Iqbal*, 129 S. Ct. at 1949-50 ("legal conclusions" and conclusory allegations are not entitled to an assumption of truth). In reviewing the motion to dismiss, the court will consider the factual allegations and determine whether the facts support a cause of action.

B.    <u>Filing Date of Complaint</u>

The defendants raise the statute of limitations in several of their arguments. Thus, as a preliminary matter, the court addresses the date the original complaint was filed. Although the original complaint was not entered on the court docket until May 4, 2009, the plaintiff argues that the case actually was filed in the first week of February.

The plaintiff states that, on January 23, 2009, he mailed home the original complaint and motion to proceed *in forma pauperis* to have his family make photocopies and mail the documents to the court. He states that the copies were made and mailed in the first week of February 2009. Pl.'s Mem., Doc. #98, at 4-5. Thus, he argues that the papers should be considered filed at the time they reached the court.

The plaintiff states further that, on April 29, 2009, the court sent him a

**22**

section 1983 form to complete and one copy of the *in forma pauperis* application that he had submitted with instructions to re-sign the copy because the court could not find a copy with an original signature. The plaintiff signed the copy and completed the section 1983 form, attaching the "very same copy of the original complaint" he had previously asked his family members to mail to the court.

The court has examined the complaint and motion to proceed *in forma pauperis*. The motion was originally signed on March 27, 2009, and re-signed on April 29, 2009. The copy of the original complaint attached to the section 1983 form bears a date of April 11, 2009. The plaintiff could not have sent his family a motion to proceed *in forma pauperis* in January 2009, when he did not sign the form and the correctional institution did not certify his account balance until two months later.

Even excluding the April 11, 2009 date on the copy of the original complaint, the earliest possible date that the complaint could have been filed is March 27, 2009. This assumes that the plaintiff gave the documents to correctional staff for mailing to the court rather than sending the documents to others to file on his behalf. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a *pro se* prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). For purposes of deciding this motion, the court will assume that the complaint was filed on March 27, 2009. The effect of the statute of limitations will be addressed below in the context of the plaintiff's individual claims.

C.    <u>Prior Pending Action</u>

The defendants first argue that the plaintiff's claims regarding religious discrimination, Halal meats, meat at Eid holiday meals, the common fare menu, religious items and practices as well as all claims against defendants Father Bruno and Imam Hasan are barred under the prior pending action doctrine. The defendants state that the plaintiff has raised or could have raised these claims in his 2004 federal action, *Vega v. Lantz*, 3:04cv1215(DFM). Several of the claims also were decided adversely to the plaintiff in the prior ruling on the defendant's motion for summary judgment in that case. The defendants specifically address this claim to causes of action 1, 2, 4, 8, 9, 14, 15, 21, 22 and 27. In response, the plaintiff states that he was denied permission to file an amended complaint in the prior case to include these claims.

A district court may stay or dismiss a suit that duplicates another federal court action as part of its general power to administer its docket. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). This power also applies to claims within a lawsuit that also are included in prior lawsuits. *See Ziemba v. Clark*, 167 Fed. Appx. 831, 832 (2d Cir. 2006) (noting that the district court acted within its discretion in dismissing duplicative claims under the prior pending action doctrine). When confronted with repetitive claims in cases filed in the same district, the court properly invokes the prior pending action doctrine and gives priority to the first-filed case. *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989). In determining whether a claim is barred by the prior

pending action doctrine, the court may rely on a comparison of the pleadings filed in the two actions. *Connecticut Fund for the Environment v. Contract Plating Co.*, 631 F. Supp. 1291, 1293 (D. Conn. 1986).

The court has reviewed the amended complaint and ruling on the motion for summary judgment filed in the prior case. Summary judgment was granted on all claims regarding denial of personal property and denial of permission to purchase religious items because the plaintiff failed to exhaust his administrative remedies on these claims before filing the action. *Vega v. Lantz*, 3:04cv1215 (DFM) (Ruling on Motion for Summary Judgment, Doc. #188, at 8). Because none of these claims will be or could be addressed on the merits in the prior action, the motion to dismiss these claims, contained in the First, Second and Fourth Causes of Action, under the prior pending action doctrine is denied.

Claims regarding the cancellation of congregate religious services and the adequacy of religious oils sold in the commissary will proceed to trial in the prior case. Although the dates of the denial of congregate services may differ, resolution of these claims will necessarily determine the outcome of the same claims in this case. The plaintiff is not entitled to litigate the same claims twice. The defendants' motion for summary judgment is granted as to claims regarding sale of religious oils in the commissary and the failure to provide weekly congregate religious services, contained in the Eighth, Ninth, Twenty-second, Twenty-seventh and Thirty-second Causes of Action.

The court cannot determine from the pleadings whether the claims in the

Fourteenth, Fifteenth and Twenty-first Causes of Action are being litigated in the prior action. The defendants' motion to dismiss is denied without prejudice as to these claims.

### D. Ineffective Assistance of Counsel & Racial Disparity[1]

The defendants next argue that all claims regarding ineffective assistance of counsel in his state criminal trial and racial disparity in the state criminal justice system must be dismissed. Encompassed within those claims are the claims against defendant Rell. The defendants state that the plaintiff raised his claims of ineffective assistance of counsel in a state habeas action. All claims were denied. *See Vega v. Commissioner of Correction*, 103 Conn. App. 732, 930 A.2d 75 (2007).

While the plaintiff may assert challenges to his conviction in a federal habeas corpus action after exhausting his state remedies, he may not raise those claims in an action for damages. The Supreme Court has held that an inmate may not bring a civil rights action if success in that action would necessarily call into question the validity of his conviction unless that conviction first has been reversed on direct appeal, expunged by executive order or called into question by a federal court's issuance of writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

If the court were to find that the plaintiff was denied effective assistance of counsel or subjected to a harsher sentence because of racial disparity in the state

---

[1] The defendants caption this section "Res Judicata and Collateral Estoppel." The court, however, analyzes these claims under alternate theories included in the section.

criminal justice system, the validity of his conviction would necessarily be called into question. Absent allegations that the conviction has been reversed or otherwise called into question, the plaintiff's claims regarding ineffective assistance of counsel and racial disparity, contained in the Twelfth Cause of Action and similar allegations not reflected in any cause of action, are barred by *Heck*. The defendants' motion to dismiss is granted as to these claims.

The only allegations against defendant Rell relate to these claims. As all claims against her have been dismissed, former Governor Rell should be terminated as a defendant in this case.

### E. Official Capacity Claims for Damages

The defendants argue that any claims for damages asserted against them in their official capacities are barred by the Eleventh Amendment. The court has examined the requests for relief included in the amended complaint. The plaintiff seeks damages from the defendants in their individual capacities only. The motion to dismiss is denied on this ground.

### F. Lost Property

The defendants contend that the plaintiff's claims for lost property are not cognizable in this action. In response, the plaintiff states that these actions were taken in retaliation for his religious beliefs and litigation activities. The court will consider in this section any claims for lost or damaged property and considers below the plaintiff's retaliation claims.

The plaintiff alleges that several items of personal property, including an

Islamic silver ring, boots, a watch and a radio, were lost, taken or damaged. Claims for deprivation of property, negligent or intentional, do not rise to the level of constitutional violations. The Supreme Court has found that the Due Process Clause is not violated where a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers, if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 531 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981). The State of Connecticut provides an adequate remedy for the kind of deprivation the plaintiff describes. *See* Conn. Gen. Stat. § 4-141 *et seq.* (providing that claims for payment or refund of money by the state may be presented to the Connecticut Claims Commission). This state remedy is not rendered inadequate simply because the plaintiff anticipates a more favorable remedy under the federal system or because it may take a longer time under the state system before his case is resolved. *See Hudson v. Palmer*, 468 U.S. at 535.

The defendants' motion to dismiss is granted as to any lost property claims included in the First, Twenty-fifth and Twenty-sixth Causes of Action.

G.  Disciplinary Reports

The defendants next argue that all claims relating to the denial of appropriate procedures at disciplinary hearings should be dismissed because the sanctions imposed on the plaintiff did not violate the requirements of *Sandin v. Connor*, 515 U.S. 472 (1995). In response, the plaintiff argues that the denial of procedural requirements is retaliatory conduct. The court will consider in this

section whether the plaintiff has stated cognizable due process claims and below whether the allegations state cognizable retaliation claims.

In *Sandin*, the Supreme Court considered the requirements to state a claim for denial of procedural due process. The Supreme Court held that the plaintiff must demonstrate both a protected liberty or property interest and that he had been deprived of that interest without being afforded due process of law. To establish a protected liberty or property interest, the plaintiff must show that the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields*, 280 F.3d 69, 81 (2d Cir. 2000).

The plaintiff describes two disciplinary hearings. At the first hearing, in September 2006, the plaintiff was sanctioned with punitive segregation and loss of contact visits for two years. Although the plaintiff does not specify the length of his confinement in punitive segregation, the disciplinary hearing was held on September 21, 2006, and the plaintiff had been released from punitive segregation by October 17, 2006. Am. Compl., ¶¶ 179, 205. At the second hearing, held on May 8, 2008, the plaintiff was sanctioned with ten days confinement in punitive segregation. Am. Compl., ¶¶ 426, 442.

*Sandin* held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutional liberty interest. *Sandin*, 515 U.S. at 485-86. Further, the Second Circuit has held that confinement in restrictive housing for less that 101 days does not constitute an atypical and

significant hardship sufficient to state a claim under *Sandin*. *See Lewis v. Sieminski*, No. 3:08-CV-728(JCH), 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010) (noting that "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*"); *see also Frazier v. Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that 120 day confinement in segregation followed by 30 day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process); *Nicholson v. Murphy*, No. 3:02cv1815(MRK), 2003 WL 22909876, at *10-11 (D. Conn. Sept. 19, 2003) (holding that confinement in segregation under thirty days is not an atypical and significant hardship).

The plaintiff's periods of confinement in punitive segregation were less than thirty days. Thus, they do not rise to the level of an atypical and significant hardship.

The plaintiff also was denied contact visits for two years. A prisoner has no constitutionally protected right to contact visits. *See Overton v. Bazzetta*, 539 U.S. 126, 134, 136-37 (2003) (denial of contact visits "is a proper and even necessary management technique to induce compliance with rules of inmate behavior" and does not violate the Eighth Amendment or constitute "a dramatic departure from accepted standards for conditions of confinement"); *Daniels v. Arapahoe County Dist. Court*, 376 Fed. Appx. 851, 855 (10th Cir. 2010) (loss of contact visits does not violate due process). The additional sanction of denial of contact visits is the

denial of a limited incremental privilege that does not implicate *Sandin*. *See Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). The additional sanction did not cause the plaintiff to be subjected to conditions of confinement constituting an atypical hardship.

The alleged violations of procedural requirements at the disciplinary hearings do not constitute cognizable due process claims. The defendants' motion to dismiss is granted as to any due process claims included in the Fifth, Sixth and Nineteenth Causes of Action.

In the Nineteenth Cause of Action, the plaintiff also argues that there was no evidence supporting the guilty finding and that the hearing officer, defendant Cormier, refused to even read the letter that gave rise to the charge. The defendants have not addressed this claim in their motion to dismiss. Thus, the claim remains pending.

In the Seventh Cause of Action, the plaintiff contends that the 2006 disciplinary findings were not impartial. The plaintiff has no right to the disciplinary finding of his choice. The Constitution requires only that disciplinary findings be supported by some evidence. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The plaintiff alleges that he "is entitled to defend himself when being attacked." Am. Compl., ¶ 175. Thus, he concedes that he was a participant in the altercation. When contraband is found in a cell, both inmates automatically are charged with infractions even when one inmate takes responsibility for the item. *See, e.g., Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir. 1990) (no constitutional

violation where inmate sanctioned for possession of contraband even though cellmate accepted responsibility for items); *Sosa v. Lantz*, 3:09cv869(JBA), 2010 WL 3925268, at *2 (D. Conn. Sept. 30, 2010) (describing practice of charging both inmates with contraband violations); *Samilton v. Horel*, No. C-08-2755 VRW(PR), 2009 WL 975456, at *4 (N.D. Cal. Apr. 9, 2009) (if contraband is found in a area accessible by both inmates and there is evidence that both were aware of its presence, inmates are jointly responsible for contraband).  Although the plaintiff is dissatisfied with the hearing officer's decision, he has not alleged facts stating a cognizable claim that the hearing officer was not impartial.  The defendants' motion to dismiss is granted as to the Seventh Cause of Action.

### H.    Standing

The defendants contend that, as a *pro se* litigant, the plaintiff cannot assert a claim on behalf of his mother for an alleged search.  *Pro se* litigants may assert only their own claims, not those of third parties.  *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 185 (2d Cir. 2001) (citing *Warth v. Seldin*, 422 U.S. 490 (1975)).  In response, the plaintiff states that he included these allegations as part of his claim that correctional staff searched his mother as an act of retaliation against the plaintiff.

To the extent that the plaintiff attempts to assert a claim on behalf of his mother in the Seventeenth Cause of Action 17, the claim is dismissed.  The court will consider below whether the allegations state a claim for retaliation.

## I.    Verbal Harassment

Although not included in any of his Causes of Action, the plaintiff alleges that defendant Trowers yelled at him.  Am. Compl., ¶ 392.  The defendants move to dismiss any claim for verbal harassment.  Again, the plaintiff contends that this incident is an example of retaliatory conduct.  The retaliation claims are addressed below.

Verbal abuse or threats, unaccompanied by injury or damage is not cognizable under section 1983.  *See Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 324-25 (S.D.N.Y. 2006) (claim of verbal abuse not cognizable under section 1983 because verbal intimidation does not rise to the level of a constitutional violation); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) (threats and verbal harassment without physical injury or damage not cognizable in claim filed by sentenced inmate under section 1983).

The defendants' motion to dismiss is granted as to any claims for verbal harassment.

## J.    Deliberate Indifference to Serious Medical Needs

The plaintiff included three deliberate indifference claims.  In his Eleventh Cause of Action, he asserts a claim of deliberate indifference to his claims of back, hip, leg, knee and foot pain.  In the Twenty-eighth Cause of Action, he asserts a claim against defendant Thalody for deliberate indifference to his need for dental treatment.  Also, in the Twenty-fourth Cause of Action, the plaintiff contends that he was involuntarily prescribed psychiatric medication.

**33**

Deliberate indifference by prison officials to a prisoner's serious medical or dental need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state such a claim, the plaintiff must allege facts demonstrating sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *Id.* at 104-06.

Because mere negligence will not support a section 1983 claim, not all lapses in prison medical care constitute a constitutional violation. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). In addition, inmates are not entitled to the medical treatment of their choice. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The conduct complained of must "shock the conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988). In addition, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

There are both subjective and objective components to the deliberate indifference standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert.*

*denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition. For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain or the existence of an injury a reasonable doctor would find important constitutes a serious medical need. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d. Cir. 1998). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. *See Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

The court first addresses the plaintiff's dental claims. The defendants contend that the dental claims are time-barred. As explained above, the court considers the complaint to have been filed no earlier than March 27, 2009. The limitations period for filing a section 1983 action is three years. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Thus, any dental treatment or denial of treatment would have to have been provided after March 27, 2006.

The plaintiff alleges that defendant Thalody treated him on January 13, 2006,

and, as a result of the treatment, he suffered severe pain for two months with his requests for follow-up treatment ignored. These events occurred beyond the limitations period. The plaintiff does not allege that he was treated by or spoke with defendant Thalody after March 27, 2006. Thus, all claims against defendant Thalody, including the Twenty-eighth Cause of Action, are time-barred. The defendants' motion to dismiss is granted as to the claims against defendant Thalody.

The plaintiff alleges that he suffers from a slipped disc, back, hip, knee, leg and foot pain. For purposes of deciding this motion only, the court will assume that the plaintiff satisfies the objective component of the deliberate indifference test. This claim is directed to defendants Dr. Silvis and Health Services Administrator Furey. The plaintiff alleges that defendant Silvis requested an MRI, which was denied, re-prescribed medication and referred the plaintiff to a foot specialist. The defendants correctly argue that these allegations do not demonstrate deliberate indifference to a serious medical need. However, the plaintiff also alleges that his pain medication was discontinued for six months, his bottom bunk pass was not renewed, and his oral and written requests to defendants Silvis and Furey seeking renewal of pain medication were ignored. In addition, the plaintiff alleges that defendant Silvis prescribed psychiatric medication against the plaintiff's wishes. At this time, the court cannot conclude that the plaintiff will be unable to present evidence demonstrating deliberate indifference regarding the claims in the Eleventh Cause of Action. The

36

defendants' motion to dismiss is denied as to these claims.

**K.**  **Retaliation**

The defendants argue that the plaintiff's retaliation claims are conclusory and must be dismissed.

Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, the plaintiff must show that his actions were protected by the Constitution or federal law and that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct.  *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).  Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003).  To support a claim of retaliation, the allegedly retaliatory conduct must deter a similarly situated inmate of ordinary resolve from exercising his constitutional rights.  It is not necessary that the plaintiff himself be deterred.  *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).   Any lesser conduct is *de minimis* and does not support a retaliation claim.  In addition, prisoners are required to tolerate more serious conduct before stating a retaliation claim.  Insulting language or disrespectful comments directed at an inmate, for example, are not sufficient to state a claim for retaliation.  *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).

Temporal proximity of an allegedly retaliatory disciplinary report to an inmate's grievance or complaint can be circumstantial evidence of retaliation.  *See*

*Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002). The Second Circuit has found sufficient evidence of retaliation when there is both a short time between protected activity and the retaliatory conduct and direct involvement by the defendant. *See Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (short time between protected activity and retaliation coupled with defendants' involvement in the decision to transfer is sufficient to support inference of retaliatory motive).

The plaintiff's general conclusions that every action taken by every defendant was in retaliation for his religion, race or litigation activities are insufficient in and of themselves to state claims for retaliation. The court will, however, review some specific incidents raised by the defendants to determine whether the allegations are sufficient to state cognizable claims. The court does not address all claims of retaliation not referenced in the motion to dismiss.

In his First Cause of Action, the plaintiff alleges that the defendants retaliated against him by issuing a false disciplinary report and confiscating his Islamic silver ring. Although he names no specific defendants in the cause of action, the factual allegations regarding this claim relate to defendants Donahue and Gonzalez. Both the confiscation of the ring and the issuance of the disciplinary report allegedly intended to justify the confiscation occurred prior to March 27, 2006. The three-year limitations period for filing a section 1983 claim commenced on March 27, 2006 and expired with the filing of the complaint on March 27, 2009. Thus, this section 1983 claim is time-barred. This is the only claim against defendant Donahue.

In opposition to the motion to dismiss, the plaintiff correctly states that RLUIPA has a four-year limitations period and argues that these claims against defendants Donahue and Gonzalez are timely. *See Congregation Adas Yeremin v. City of N.Y.*, 673 F. Supp. 2d 94, 107 (E.D.N.Y. 2009) (citing 28 U.S.C. § 1658(a)). The plaintiff alleges no facts showing that possession of a silver ring is essential to practice his religion. Thus, although the ring is a religious item, the confiscation of the ring is a lost property claim, not a claim for interference with the practice of religion or violation of religious beliefs. *See, e.g., LaPointe v. Walker*, No. 06-952-DGW, 2010 WL 3724274, at *7 (S.D. Ill. Sept. 15, 2010) (confiscation of prayer rug did not violate RLUIPA); *Shaw v. Norman*, No. CIV.A.6:07CV443, 2009 WL 1780123, at *3-4 (E.D. Tex. Jun. 22, 2009) (confiscation of prayer beads and prayer rug did not violate RLUIPA, but confiscation of Koran did constitute RLUIPA violation), <u>appeal dismissed</u>, 389 Fed. Appx. 408, 409 (5th Cir. 2010); *Piskanin v. Rendell*, Civil Action No. 06-129J, 2008 WL 4442004, at *8-9 (W.D. Pa. Sept. 30, 2008) (confiscation of religious medal failed to state First Amendment or RLUIPA claim). Thus, the longer RLUIPA limitations period does not save this claim.

In the Fifth and Sixth Causes of Action, the plaintiff alleges that the issuance of the 2006 disciplinary reports for fighting and possession of contraband and denial of proper procedures at the disciplinary hearing were acts of retaliation. The plaintiff alleges that defendant Maureen Allen acted in retaliation for the plaintiff's religion and prior lawsuits. Am. Compl., ¶ 162. He

alleges no facts, however, demonstrating such a connection. Rather, the plaintiff states that he had a right to defend himself, thereby conceding that he participated in the altercation. Am. Compl., ¶ 175. The court concludes that the plaintiff's conclusory allegation is insufficient to link defendant Maureen Allen's actions to his litigation activities or religion. The plaintiff fails to state a retaliation claim with regard to the 2006 disciplinary charges.

In the Twenty-fifth Cause of Action, the plaintiff contends that the defendants denial of permission to purchase a replacement watch and replacement boots was retaliatory. The only allegation of retaliation is the plaintiff's assertion that he "knew" that the actions of defendants Beaudry and Arzt regarding replacement of his boots was in retaliation for his prior lawsuit. Am. Compl., ¶ 406. This assumption is insufficient to support a retaliation claim.

The plaintiff's only claim against defendant Trowers appears to be retaliation. The plaintiff alleges that when he objected to the search of his mother, defendant Trowers asked the plaintiff for his ID card and threatened to issue a disciplinary report. A few days later, defendant Trowers began to follow him around and identify him to other correctional officers. About a month after his complaint, defendant Trowers came to the cell door and began yelling at the plaintiff. Although some of defendant Trowers' actions are temporally related to the complaint about the search, they do not rise to the level of adverse action required to support a retaliation claim. The court concludes that these actions would not deter an inmate of ordinary resolve from submitting a complaint. *See*

*Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (insulting or disrespectful comments and "hostile manner" insufficient to support retaliation claim).

The plaintiff also argues that the search of his mother was a retaliatory act directed toward the plaintiff. In the original complaint, the plaintiff alleged that his mother had been strip-searched. In the amended complaint, the plaintiff states that defendant Trowers required that his mother remove her bra because she was unable to pass through the metal detector. Am. Compl., ¶ 361. The plaintiff alleges, without any supporting facts, that protocol was not followed, suggesting that his mother was treated differently than other visitors. The plaintiff argues that defendant Trowers retaliated against him for complaining about the treatment of his mother. He included no reference to defendant Trowers in the amended complaint prior to the date of the search. This complaint about his mother's treatment necessarily occurred after the search. Thus, defendant Trowers could not have searched the plaintiff's mother as retaliation against the plaintiff for lodging a complaint against defendant Trowers. The plaintiff's assumption that the search was retaliatory is conclusory and insufficient to support a retaliation claim. In addition, the court questions, but needs not resolve, whether minor actions against a third party can constitute retaliation against the plaintiff. *See McDowell v. Litz*, No. 10-4635, 2011 WL 816616, at *2 (3d Cir. Mar. 10, 2011) (rejecting retaliation claim "even assuming that these minor inconveniences to third party can constitute adverse action"). The claims against defendant Trowers are dismissed.

L.    **Respondeat Superior Liability**

The plaintiff names as defendants many supervisory officials.  The defendants move to dismiss the claims against these defendants because the plaintiff fails to state cognizable claims for supervisory liability.

The doctrine of respondeat superior is inapplicable in section 1983 cases. *See Hayut v. State University of New York*, 352 F.3d 733, 753 (2d Cir. 2003). Supervisors are not automatically liable under section 1983 when their subordinates commit a constitutional tort.  To establish a claim for supervisory liability, the plaintiff must demonstrate one or more of the following criteria:  (1) the defendant actually and directly participated in the alleged acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). The plaintiff also must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Iqbal*, the Supreme Court found that a supervisor can be held liable only

"through the official's own individual actions." 129 S. Ct. at 1948. This decision arguably casts doubt on the continued viability of some of the categories for supervisory liability. The Second Circuit has not revisited the criteria for supervisory liability following *Iqbal*. *See DeJesus v. Albright*, No. 08 Civ. 5804(DLC), 2011 WL 814838,a t *6 n.4 (S.D.N.Y. Mar. 9, 2011). Even under the broad categories for supervisory liability, however, the plaintiff has not alleged any facts sufficient to state cognizable claims against several defendants.

The plaintiff alleges that he "notified," inter alia, defendants Lantz, Marcial, Sieminski and Frey of various violations of his religious requirements. Am. Compl., ¶¶ 185, 189. Defendant Bruno responded to the plaintiff. The fact that a supervisory official referred a prisoner's letter of protest to other officials for response does not establish the requisite personal involvement of the supervisory official. *See Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006) (citing cases).

The plaintiff asserts various claims against defendant Imam Hasan for advice provided regarding religious matters. In the plaintiff's other pending case, the court, Martinez, M.J., held that Imam Hasan, a consultant with the Department of Correction, acts as an advisor to other defendants and does not have the authority to make departmental policy regarding religious matters, to deprive the plaintiff of any rights or to remedy deprivations by others. Thus, the court concluded that defendant Hasan could not be personally involved in any of the plaintiff's claims. *Vega v. Lantz*, No. 3:04cv1215(DFM) (D. Conn.) (Doc. #188, Sept.

25, 2009 Ruling on Defendants' Motion for Summary Judgment, at 12-13). The plaintiff's claims against defendant Hasan are dismissed on the ground that the issue of defendant Hasan's involvement has previously been decided. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) ("'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case'")(quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The plaintiff alleges few facts regarding defendant Dzurenda. Following the plaintiff's transfer to Garner, defendant Dzurenda investigated the plaintiff's complaint that a separation profile has been filed and informed him that this was incorrect. Defendant Dzurenda denied a grievance regarding the separation profile. Am. Compl., ¶¶ 499, 501. After the plaintiff complained, defendant Dzurenda agreed to use teal trays for common fare meals. Am. Compl., ¶ 506. These allegations do not show that defendant Dzurenda denied the plaintiff any constitutionally protected right. Accordingly, the claims against defendant Dzurenda are dismissed for lack of personal involvement.

The plaintiff includes as a defendant Frederick Levesque, the Director of Classification and Population Management. Defendant Levesque has overall charge of inmate transfers. The court assumes that the plaintiff has named defendant Levesque because he was transferred to Garner. The plaintiff alleges no facts suggesting that defendant Levesque was personally aware of his transfer. Absent any such knowledge, the plaintiff fails to state a claim for supervisory

liability against defendant Levesque.  All claims against defendant Levesque are dismissed pursuant to 28 U.S.C. § 1915A.

The only allegations against defendant Choinski and the remaining allegations against defendant Sieminski are that they denied grievance appeals. "[T]he fact that a prison official in the prison 'chain of command' affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official" in a claim that the denial of the grievance deprived the inmate of a constitutionally protected right. *Ramsey v. Goord*, No. 05-CV-47A, 2005 WL 2000144, at *8 (W.D.N.Y. Aug. 13, 2005) (citing cases).

The defendants' motion to dismiss is granted as to all claims against defendants Lantz, Marcial, Dzurenda, Hasan, Frey, Choinski and Sieminski.  The defendants also argue the lack of personal involvement by defendants Murphy and Furey.  The plaintiff has alleged facts suggesting that these two defendants took specific actions in response to his complaints to them.  Thus, the motion to dismiss is denied as to defendants Furey and Murphy.

N.     Lack of Service of Process

The defendants note that service was returned unexecuted as to defendants Trowers, Thalody, Donahue and Gonzalez and move to dismiss all claims against them for lack of personal jurisdiction.

On November 12, 2010, service documents were given to the U.S. Marshal Service for service of the amended complaint on defendants Donahue and Trowers.  Both defendants were served on January 28, 2011.  Accordingly, the

motion to dismiss is denied as to defendants Donahue and Trowers.

The defendants state that defendants Thalody and Gonzalez have left state service and counsel has not been able to locate them. As the court has dismissed all claims against defendant Thalody as time-barred, the motion to dismiss is denied as moot against defendant Thalody.

Most of the allegations against defendant Gonzalez also predate the limitations period. Thus, any claim based on those allegations is time-barred. The only allegation during the relevant time period is that, when the plaintiff complained about the first search of his cell in July 2008, defendant Gonzalez told him to "deal with it." This statement is not sufficient to state a cognizable claim against defendant Gonzalez. Accordingly, all claims against defendant Gonzalez are dismissed. The defendants' motion to dismiss the claims against defendant Gonzalez on the ground of lack of service of process is denied as moot.

O.    Absolute Immunity

The defendants contend that defendant Attorney General Blumenthal is protected by absolute immunity. The Second Circuit has held that attorneys general are protected by absolute immunity with regard to claims of harmful conduct relating to the defense of the state or state officials. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (Attorney General absolutely immune for decision whether to initiate or not to initiate civil or administrative proceedings and whether to afford representation to state employee); *Barrett v. United States*, 798 F.2d 565, 572-73 (2d Cir. 1986) (absolute immunity applies to government

attorneys in determining whether to initiate or defend civil actions) .

The plaintiff alleges that defendant Blumenthal approved the actions of defendant Bruno, tacitly approved the passing of rules and regulations and failed to take action to ensure that departmental rules were enacted in accordance with the UAPA. The court construes this claim to contend that defendant Blumenthal should have brought an action against the correctional defendants for failure to conform their actions to state law. In this capacity, he is entitled to absolute immunity.

The defendants' motion to dismiss is granted as to all claims against defendant Blumenthal. The Clerk is directed to terminate former Attorney General Blumenthal as a defendant in this case.

P.    <u>UAPA Claims</u>

The plaintiff contends that the Department of Correction Administrative Directives were not adopted pursuant to the UAPA. The defendants move to dismiss this claim on the ground that the allegations do not raise a federal claim.

As explained above, the plaintiff has explicitly stated that he brings this action only for violations of federally protected rights. State courts are "the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *see also Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1088 (9th Cir. 2007) (deferring to state court's interpretation of state agency law as not granting asserted rights). Where the state's highest court has not addressed the issue, the federal court is bound by the decision of the state intermediate court. *See*

*Ponnapula v. Spitzer*, 297 F.3d 172, 183 (2d Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 66, 67-68 (1991)).

The Connecticut Appellate Court has held that the Department of Correction Administrative Directives interpret and apply properly promulgated regulations. The directives "are created for the internal management of the correctional institutions and are not regulations that are subject to the UAPA requirements. § 4-166(13)(A)." *Pierce v. Lantz*, 113 Conn. App. 98, 104-05, 965 A.2d 576, 580 (2009).

The state court has determined that the directives are not regulations and this court is bound by that determination. The plaintiff has not identified any federal right violated by the defendants regarding adoption of the directives. The defendants' motion to dismiss is granted as to the Thirty-First Cause of Action.

Q.   Section 1985 Conspiracy Claims

The plaintiff references 42 U.S.C. §§ 1985 and 1986 in his jurisdictional statement. The defendants contend that these claims should be dismissed.

Section 1985 deals with conspiracies. The plaintiff does not identify which subsection of Section 1985 was violated. Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties, and Section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings. Since the plaintiff is not a federal official, and his claims are not related to the participation of witnesses in judicial proceedings, the first two subsections of 42 U.S.C. § 1985 are not relevant to this action.

Section 1985(3) prohibits conspiracies to deprive persons of the equal

protection of the laws.  In order to state a claim under this provision, a plaintiff must allege:  (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege.  Importantly, the plaintiff must show that the conspiracy was motivated by a racial or otherwise class-based invidious discriminatory animus.  Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights.  *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971).

The plaintiff concludes that the actions alleged in the amended complaint were taken because he is a Muslim.  However, he has alleged no specific facts to support a plausible conspiracy claim.  Many of the incidents described are not specifically directed toward the plaintiff.  He is affected along with other inmates in his housing unit.  For example, all inmates housed in the expansion units at MacDougall-Walker Correctional Center are treated differently from inmates in general population in the main building.  The incidents involving the alleged deprivation of materials and foods associated with religious observances are attributed to single individuals.  A conspiracy necessarily involves two or more persons acting in concert.  *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (plaintiff must show an agreement between two or more persons acting in

**49**

concert to inflict an unconstitutional injury in order to prove conspiracy); *see also Marshak v. Marshak*, 226 Conn. 652, 665 (1993), overruled on other grounds by *State v. Vakilzaden*, 251 Conn. 656 (1999) (conspiracy requires a combination between two or more persons to commit an unlawful act).   Although other incidents are specifically directed toward the plaintiff, such as a statement by the disciplinary investigator that she does not like the plaintiff and wants him found guilty or the destruction of personal property,  there are no facts suggesting that the actions were motivated by the plaintiff's religion or national origin.  Thus, the complaint fails to state a cognizable conspiracy claim under section 1985.  *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (complaint containing collection of disparate incidents with conclusory allegation of conspiracy fails to state cognizable section 1985 claim).

Section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part).  Thus, a prerequisite for an actionable claim under section 1986 is a viable claim under section 1985.  The defendants' motion to dismiss is granted as to the section 1985 and 1986 claims.

R.    Qualified Immunity

The defendants also argue that all claims for monetary damages should be dismissed because the defendants are protected by qualified immunity.

Government officials performing discretionary functions are protected from

**50**

liability for civil damages unless their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have been aware.  *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009).  The constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," although the exact issue need not have been previously decided.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  To establish a defense of qualified immunity, the defendant must establish that his acts did not violate a constitutional right or, if a violation was shown, that the right was not clearly established at the time of the incident.  *Pearson*, 129 U.S. at 816.

In this section of their memorandum, the defendants recite the applicable law and argue that the plaintiff has described his claims in general terms which are insufficient to support cognizable claims.  The court acknowledges that the plaintiff's causes of action use expansive language.  The factual allegations, however, do not.  Absent the defendants' specific legal analysis of the claims and supporting allegations, the court cannot consider the defendants' qualified immunity arguments at this time.

S.      <u>Claims Regarding State Habeas Action</u>

The plaintiff alleges in his Twenty-ninth Cause of Action that he was unable to file a state habeas corpus action in state court without prepayment of the filing fee.  Absent allegations suggesting that any defendant in this action denied the plaintiff leave to file his state habeas action, the plaintiff fails to state a cognizable

claim against any defendant.  This claim is dismissed pursuant to 28 U.S.C. §
1915A.

T.    Commissary Prices

As part of his Sixteenth Cause of Action, th plaintiff alleges that the prison
commissary applies a 30% mark-up on all items and charges inmates sales tax on
their purchases.  Inmates have no constitutional right to purchase items from the
prison commissary.  *See Mitchell v. City of New York*, No. 10 Civ. 4121(PKC), 2011
WL 1899718, at *2 (S.D.N.Y. May 13, 2011) (dismissing claims regarding
commissary pricing and selection); *Davis v. Shaw*, No. 08 Civ. 364(NRB), 2009 WL
1490609, at *1 (S.D.N.Y. May 20, 2009) (any claims regarding prison commissary do
not rise to level of constitutional violation because inmates have no constitutional
right to use prison commissary); *Torres v. Droun*, No. 01 Civ. 1844(DJS)(TPS),
2004 WL 721729, at *7 (D. Conn. Mar. 30, 2004) (no constitutional right to purchase
items from prison commissary or outside vendor).  In addition, the court can
discern no federal law that is violated by requiring inmates to pay state sales tax
on their purchases.  To the extent that the plaintiff is arguing that state law
prohibits charging sales tax on commissary purchases, his claim is not cognizable
under section 1983.  *See Richard v. Cupp*, Civil Action No. 08-1544, 2009 WL
840218, at *5 (W.D. La. Mar. 25, 2009) (dismissing as frivolous a section 1983
challenge to collection of sales tax on commissary purchases).

The plaintiff's claims regarding commissary pricing and payment of sales
tax are dismissed pursuant to 28 U.S.C. § 1915A.

52

## IV. Conclusion

The defendants' motion to dismiss [Doc. #77] is GRANTED as to the claims contained in the First, Fifth, Sixth, Seventh, Eighth, Ninth, Twelfth, Seventeenth, Twenty-second, Twenty-fifth, Twenty-sixth, Twenty-seventh, Twenty-eighth, Thirty-first and Thirty-second Causes of Action and all conspiracy claims pursuant to 42 U.S.C. §§ 1985 and 1986.  The motion to dismiss also is granted as to the retaliation claims against defendant Trowers.  The motion is DENIED as to the remaining claims.

The Twenty-ninth Cause of Action, claiming that the plaintiff was unable to file a state habeas action, the claims included in the Sixteenth Cause of Action regarding commissary pricing and sales tax, and the claims against defendants Thalody, Gonzalez and Levesque are dismissed pursuant to 28 U.S.C. § 1915A.

As all claims against them have been dismissed, the Clerk is directed to terminate defendants Rell, Blumenthal, Thalody, Gonzalez, Donahue, Trowers, Lantz, Marcial, Dzurenda, Hasan, Frey, Levesque, Choinski and Sieminski.

The defendants have not addressed many of the plaintiff's claims including, but not limited to, claims that various actions violated his rights under the ADA or interfered with his ability to practice his religion thereby violating his rights under the First Amendment and RLUIPA, that he was subjected to unconstitutional conditions of confinement, that the defendants failed to protect him from harm, that he was not permitted to purchase various religious items and several claims of retaliatory conduct.  Thus, these claims remain pending as well.

The defendants' request to file a second motion to dismiss is denied.  The dates set for completion of discovery and filing motions for summary judgment have passed.  The parties are directed to complete discovery within sixty days from the date of this order and to file any motions for summary judgment within ninety days from the date of this order.  If no motion for summary judgment is filed within the time specified, the matter will be scheduled for trial.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  June 21, 2011.