## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOE BURGOS VEGA,        :
       Plaintiff,      :
                    :
   v.                 :       **CASE NO. 3:09-cv-737 (VLB)**
                    :
GOV. JODI RELL, et al.,     :
       Defendants.    :      **December 4, 2013**

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. # 217]; RULING DISMISSING ADDITIONAL CLAIMS PURSUANT TO 28 U.S.C. § 1915

Currently pending before the Court is the Defendants' [217] Motion for Summary Judgment in which they argue that summary judgment should be granted on four grounds: 1) the Defendants are entitled to qualified immunity as to each of Plaintiff's religious expression claims, 2) the Plaintiff has failed to exhaust his administrative remedies as to his claim of unsanitary cell conditions in May 2008, and 3) the Defendant is not entitled to monetary damages under the Religious Land Use and Institutionalized Persons Act (RLUIPA).  On May 24, 2013 the Plaintiff responded with his Objection in Opposition to Defendant's Motion for Summary Judgment [Dkt. 223].  In that filing, the Plaintiff argues that the Defendants are not entitled to summary judgment as to his twentieth cause of action regarding his being housed in an unsanitary cell in segregation because he was prevented from filing the appropriate forms and therefore should be excused from the exhaustion requirement, that he is entitled to monetary damages under RLUIPA, that the Defendants are not entitled to qualified immunity, and admitting that prison officials did *not* regularly and unjustifiably

1

interfere with the Plaintiff's legal mail.  For the following reasons, the Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## I.   STANDARD OF REVIEW

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  *Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary

judgment is inappropriate.  *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  *Harvey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).

## II.   FACTUAL BACKGROUND

The procedural history of this case is lengthy and its recitation unnecessary for purposes of this motion.  Therefore, only the relevant facts are included below as they relate to each specific legal ground asserted in the subject motion.  As a preliminary matter, the Court notes that attached to the Plaintiff's Objection to the Defendant's Motion for Summary Judgment is his certificate from the Professional Career Development Institute for completion of paralegal studies.  [Doc. 223 at 57].  Furthermore, the Plaintiff includes an official student transcript evincing his graduation from the program with a 99% grade average, specialty in civil litigation on July 13, 2001.  [*Id.* at 58].  The Court also takes judicial notice of the Plaintiff's litigation experience, consisting of four cases filed in this district, including one which was tried before the Honorable Magistrate Judge Donna F. Martinez from April 23, 2013 through April 25, 2013 [Dkt. No. 4-cv-1215(DFM)] and involved many of the same or similar legal issues raised by this instant case, in which Plaintiff was represented by counsel. Consequently, the Court finds no grounds to continue to liberally construe his pleadings, a construction traditionally afforded pro se parties pursuant to *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S.

3

89, 94 (2007)).  *See Cusamano v. Sobek*, 604 F.Supp.2d 416, 445 (N.D.N.Y. 2009) (internal citations omitted) (noting that there are circumstances where a particularly litigious inmate who is quite familiar with pleadings and legal jargon should not be afforded the usual liberty of pleading).

III.   <u>DISCUSSION</u>

Of the Plaintiff's original 32-Count Amended Complaint [Dkt. 51], thirteen claims remain and several are the subject of the Motion for Summary Judgment. The Defendants have moved for summary judgment on three grounds and the Plaintiff has filed a brief in opposition.  Each issue raised by the Defendants is discussed separately below.  The Court also raises issues of legal sufficiency pursuant to 28 U.S.C. § 1915(e)(2)(B).

a.   <u>COUNT 20</u>

The Prison Litigation Reform Act requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions."  42 U.S.C. § 1997e(a).  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  Inmates must properly exhaust their administrative remedies.  This requirement includes complying with all procedural requirements, including filing deadlines, so that the inmate's issue is reviewed on the merits.  *See id.* at 90, 94-95.

4

In support of their motion for summary judgment with respect to Mr. Vega's Count 20, which alleges that Plaintiff experienced unsanitary cell conditions while housed in the Restrictive Housing Unit ("RHU," a segregation unit) in May 2008, the Defendants have provided the affidavit of Correctional Counselor Rachel Boland.  Counselor Boland states that she is the Administrative Remedies Coordinator ("ARC") at MacDougall-Walker Correctional Institution and that, in that capacity, she maintains the files for all inmate grievances.  [Dkt. 217-3, Boland Aff.  ¶¶ 2, 3].  Boland has affirmed that she thoroughly reviewed all grievances filed by inmate Vega and, "although there are many grievances dealing with religion, food, and other items, such as headwear, there are no grievance [sic.] filed by inmate Vega in the time period immediately following his placement in segregation in September 2006 or with regard to cell #6 in May 2008."  [*Id.* at ¶4].  Boland has further attested that she has "reviewed all the grievance logs and the grievances and Inmate Vega did not file any grievance at any time concerning the alleged unsanitary condition of his cell in Segregation, as plaintiff has alleged in the lawsuit, alleging that there was feces smeared on the wall, and the toilet did not flush."  [*Id.* at ¶5].  She concludes that this is the type of complaint that could and should be raised in the formal grievance process but was not raised by the Plaintiff.  [*Id.* at ¶6].

In opposition to the motion for summary judgment as to Count 20, the plaintiff does not contend that he is not required to have exhausted his administrative remedies.  Rather, he states that he did not exhaust the available remedies because, although he requested "inmate requests, line grievances,

etc.," to notify officials of the conditions in cell 6, corrections officers working at RHU "refused to furnish [him] with the needed and requested documents" necessary to grieve his cell conditions from May 8 to May 17, 2008.  [Dkt. 223-5, p. 12; dkt. 223-2, Vega Declaration, p. 8 ¶33].  On the contrary, Vega did file a disciplinary appeal on May 9, 2008 during his stay in cell 6 on a form which allowed him to grieve the cell condition.  [*See* Dkt. 51, Amended Compl. at ¶¶437-38; dkt. 223-2, Vega Declaration, p.9 ¶34].  Nonetheless, Plaintiff argues that he should be excused from the administrative grievance process because he made passing mention of the allegedly deplorable cell conditions in one line of the disciplinary appeal he filed on May 9, 2008 while in cell 6 of the restricted housing unit.  *Id.*  Specifically, the evidence that Mr. Vega has presented in conjunction with his opposition to the motion for summary judgment does not support his contentions that he was unable to exhaust the administrative remedies available to him.  The disciplinary appeal form Mr. Vega submitted in response to his allegedly faulty disciplinary hearing contains three categories of complaint among which an inmate may choose to denote the nature of his complaint: a Grievance, a Health Services Review, or an Appeal.  [Dkt. 223-3, 5/9/08 Disciplinary Appeal, p.72].  Section 1 of this Inmate Administrative Remedy Form appears, in relevant part, as follows, complete with boxes an inmate may check depending on the type of complaint he wishes to make:

> A.  ___ I am filing a Grievance.
>
> B.  ___ I am requesting a Health services Review …
>
> C.  ___ I am filing an Appeal of a: (select one below)
>
>      ___ Disciplinary Action

     ___ **Special Management Decision**

     ___ **Publication Review Committee Decision**

     ___ **Security Risk Group Designation …**

[*Id.*].  Although Mr. Vega could plainly have checked the "Grievance" box on this form, he did not do so.  Instead, he chose to indicate that he was filing an Appeal of a Disciplinary Action.  [*Id.*].  Mr. Vega's completion of this Form also indicates that it was indeed provided to Mr. Vega and not withheld by MacDougall-Walker's officers as Mr. Vega contends.

  Further, although Mr. Vega relayed multiple complaints of due process and other violations allegedly perpetrated during his disciplinary hearing on the Form – contained in 27 lines of text – he included only the following statement couched among his due process claims as to his cell conditions: "Right now I'm in a cell with feasy [sic] on the walls [illegible] and a toilet that doesn't flush and a very dirty cell."  [Dkt. 223-3, 5/9/08 Disciplinary Appeal, p.72].  This passing mention of the cell condition together with his failure to check the "I am filing a Grievance" line clearly indicate that Mr. Vega did not grieve the cell condition, but rather mentioned the cell condition as a consequence of the disciplinary action he was appealing.

  Mr. Vega's appeal was denied on June 2, 2008 (after his release from the RHU) by letter from District Administrator Wayne Choinski, who concluded that the Hearing Officer's finding as to disciplinary action was reasonable and that no serious due process failure occurred in the disposition of Mr. Vega's disciplinary report.  The letter does not contain any mention of or any determination as to Vega's alleged grievance regarding the unsanitary conditions of RHU cell 6.  [Dkt.

7

223-3, 6/2/08 Disciplinary Appeal Denial, p.74].  Indeed, the Department of

Correction's Code of Penal Discipline describes the procedure for appealing a

disciplinary action (as Mr. Vega did), in relevant part, as follows:

> An inmate may appeal a disciplinary action by completing the Disciplinary Hearing Appeal form CN 9507.  Each unit shall provide Disciplinary Hearing Appeal forms, and a mail box clearly marked "Disciplinary Appeals", for inmates to submit a disciplinary appeal.  The Disciplinary Coordinator shall remove and immediately forward all appeals, along with any other appropriate documents used in the adjudication of the Disciplinary Report, to the Unit Administrator at the facility where the disciplinary report was adjudicated, who shall not delegate the authority to respond to disciplinary appeals. Disciplinary action resulting from a guilty plea shall not be subject to an appeal.  The appeal must be submitted within 15 days of the receipt of the Disciplinary Process Summary by the inmate.  The appropriate Unit Administrator shall respond to any appeal within 30 business days of the receipt of the appeal.
>
> The appellate authority may alter disciplinary action in any way that serves the State's correctional objectives.  The action of the Unit Administrator shall be final and not subject to further appeal.

St. of Conn. Dep't of Corr., 9.5, Code of Penal Discipline #39 (March 5, 2003).

Nothing in the Code indicates that a prisoner may file a general grievance as part

of an appeal of a disciplinary hearing, as Mr. Vega claims to have done with

regard to cell 6.

Lastly, although Section 3 of the Inmate Administrative Remedy Form

clearly indicates that a grievance "must be filed within 30 days of the occurrence

or discovery of the cause of the grievance," there is no indication that Mr. Vega

filed or attempted to file a grievance after his release from RHU on May 17, 2008,

8

well before his thirty day filing window would have expired.  [Dkt. 223-3, 5/9/08 Disciplinary Appeal, p.72].

In sum, no evidence in the record indicates that Mr. Vega's complaints as to cell 6's unsanitary conditions were filed as a grievance or reviewed on the merits, and nothing in the record indicates that the Plaintiff attempted to file a grievance after his release from the RHU even if the grievance forms were withheld from him during his stay in RHU.  Further, the Plaintiff does not allege that any specific correction officers withheld or refused to provide a grievance form to him; indeed, aside from Plaintiff's conclusory allegation that he asked for grievance forms and correctional officers refused to provide them during his RHU stay, the Plaintiff has failed to allege any specifics as to his alleged requests.  Thus, the Plaintiff has not shown that administrative remedies were not, in fact, available to him.  *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) ("Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact 'available' to the prisoner.").  Moreover, Vega did have a form on which he could have grieved the cell condition.  Finally, Plaintiff's appeal of his disciplinary action did not address this claim on the merits, which is a substantial goal of the prisoner administrative exhaustion requirement under the PSLRA.  *See, e.g., Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted [42 U.S.C.] § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some

instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.") (internal quotation marks and citations omitted).  The Court concludes that the Plaintiff has failed to exhaust his administrative remedies with regard to Count 20, the alleged unsanitary conditions of RHU cell 6.  Defendants' motion for summary judgment is GRANTED as to Count 20.

     **b.  <u>COUNT 3</u>**

     Count 3 presents similar claims as Count 20.  Vega alleges in Count 3 that he was forbidden from cleaning his "assigned cell(s)" even though the Defendants knew of the "biohazardous and deplorable condition(s) of the prison(s) and cell(s)."  [Dkt. 51, Amended Compl. at ¶ 536].  The Plaintiff does not specify whether this Count refers to RHU cell #6 or to the cell he shared with Fermin Rodriguez.  As discussed previously, the Plaintiff has failed to exhaust his administrative remedies with regard to RHU cell #6.  As to the cell he shared with inmate Rodriguez, the record indicates that Vega was indeed furnished with the necessary grievance forms, initiated grievance procedures, and later abandoned the grievance process after reaching a concession with facility officials.

     On April 13, 2006, Mr. Vega filed an Inmate Grievance Form A, Level 1 in which he grieved the sanitary condition of the cell which he shared with inmate Fermin Rodriguez.  [Pl. Ex. F, Doc 223-3 at 69].  The bottom of the form indicates

that the dispute was resolved with a compromise; Mr. Vega would be supplied with "a small amount of cleaning materials to last 1 week to be re-filled on a weekly basis – as long as inmate Vega is housed with inmate Fermin Rodriguez," who apparently caused the allegedly unsanitary conditions. [*Id*.]. On May 17, 2006 a Grievance Routing Slip of unknown authorship indicates the Plaintiff met with the unit administrator regarding the sanitation of his cell raised in the Grievance Form A. [*Id*. at 70]. The Slip indicates that a compromise was reached whereby the Plaintiff was "willing to stay with inmate Rodriguez, which benefits the DOC because he would have problems with other inmates" and that Vega would be allowed "[a] small amount of cleaning materials for one week to be re-filled on a weekly basis, to be allowed in cell for as long as inmate Vega is housed with [inmate] Rodriguez." *Id*. This compromise was also reported in the "official use only" section of Plaintiff's Grievance Form A, in which the disposition of the grievance was noted. [Dkt. 223-3, p. 69]. The report states that "Inmate Vega also is a tierman, [with] access to cleaning materials." [*Id*.]. Neither party submitted any documentation of the Plaintiff's pursuit of further administrative remedies related to cell sanitation regarding Vega's and Rodriguez's shared cell or RHU cell 6.

There is no indication that the Plaintiff availed himself of any further available administrative remedies as to the conditions in his cell with Fermin Rodriguez. On the contrary, Vega reached an amicable solution as to the conditions of his non-RHU cell – the Plaintiff was afforded the opportunity to be housed with other inmates with whom he would have had problems but their cells

might have been cleaner, or remain housed with an inmate with whom Mr. Vega did not have problems and be afforded extra cleaning materials – and consequently did not need to follow the administrative process because his complaint was resolved.  Plaintiff does not allege that this compromise was later retracted.  Further, Mr. Vega has not alleged that he has filed grievances as to the unsanitary conditions in any other cell he has occupied.

In light of the Plaintiff's amicable resolution of the above claim, the Court dismisses Count 3 pursuant to 28 U.S.C. § 1915, which provides that, in cases in which a plaintiff proceeds in forma pauperis, "the court shall dismiss the case at any time if the court determines that … (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Mr. Vega is proceeding in forma pauperis in this action.  As this Court can grant no relief for Count 3, which the Plaintiff resolved by way of a compromise with prison officials prior to the commencement of this action, the Court concludes that Count 3 is frivolous and fails to state a legal claim.  Count 3 must thus be DISMISSED.

### c.  MONETARY DAMAGES UNDER THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

The Defendants argue that monetary damages are not recoverable from defendants in either their individual or official capacities for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  The Plaintiff responds that the Defendants have misinterpreted the plain language of the Act

and that he is, in fact, entitled to monetary damages against the Defendants in their individual capacities.

Under the RLUIPA, a plaintiff must demonstrate that the state has imposed a substantial burden on the exercise of his religion; however, the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-1(a).  Under the First Amendment, on the other hand, the law is less generous to plaintiff prisoners; a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy "is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (internal quotation marks omitted).

Although the Second Circuit has not addressed the issue, district courts within this circuit have held that damages claims for violations of RLUIPA are not cognizable against individuals in either a defendant's official or individual capacity.  *See, e.g., Singh v. Goord*, No. 05 Civ. 9680, 2010 WL 1903997, at *3 (S.D.N.Y. May 10, 2010) (RLUIPA does not allow recovery of damages in official or individual capacity), *aff'd sub nom. Singh v. Lynch*, 460 Fed. App'x 45 (2d Cir. 2012); *El Badrawi v. Dep't of Homeland Security*, 579 F. Supp. 2d 249, 261 (D. Conn. 2008) (RLUIPA does not abrogate Eleventh Amendment immunity); *Bock v. Gold*, No. 05-CV-151, 2008 WL 345890, at *1 (D. Vt. Feb. 7, 2008) (RLUIPA does not allow recovery for damages in individual or official capacity).

13

The courts in so holding rely on the fact that Congress enacted RLUIPA pursuant to its spending power.  Such legislation is like a contract in which the state agrees to comply with certain conditions in exchange for federal funds.  As individual state actors are not the recipients of the funds, damages cannot be sought from the individuals.  *See Pugh v. Goord*, 571 F. Supp. 2d 477, 507 (S.D.N.Y. 2008).  With regard to official capacity claims, the courts have determined that the language of RLUIPA is not sufficiently unequivocal to abrogate the state's Eleventh Amendment immunity.  *See El Badrawi*, 579 F. Supp. 2d at 261.

This Court agrees with the reasoning of the other courts in this circuit and finds that monetary damages may not be awarded under RLUIPA.  The Plaintiff has set forth his claim for monetary damages in section XXXVII of his Amended Complaint (Dkt. No. 51), including as to his claims for violations of RLUIPA.  To the extent the Plaintiff seeks monetary damages, *all* claims against individuals and entities for violations of the Plaintiff's practice of his faith pursuant to RLUIPA are dismissed as not cognizable under that statute.  The Plaintiff's remaining RLUIPA claims are extant to the extent that they do not seek monetary damages.

### d.  QUALIFIED IMMUNITY

The Defendants argue that they are entitled to qualified immunity in this case because "the plaintiff's claimed 'religious rituals' are entirely vague and unclear" and because "the law is wholly unclear and entirely unsettled."  [Dkt. 217-1, Ds' MSJ, p.16].  The Defendants also argue that all claims for monetary

damages should be dismissed because the Defendants are protected by qualified immunity.  The Plaintiff concedes this point, but responds that qualified immunity is not a defense to his claims for injunctive relief.  [Dkt. 223-5, P's Opp., p. 33]. Furthermore, he argues that the Defendants' actions deprived him of the right to freely practice his religious faith.  The Court interprets the Plaintiff's response to mean that he seeks injunctive relief in the form of an order enjoining the Defendants from depriving him of the right to freely practice his religious faith in the manner in which the remaining clams in his complaint allege they have.

The doctrine of qualified immunity protects government officials from liability for damages caused by the performance of discretionary official functions if their conduct does not violate a plaintiff's clearly established right of which a reasonable person would have been aware.  *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).  The constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," although the exact issue need not have been previously decided.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Prison officials performing tasks entrusted to their discretion typically "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Hanrahan v. Doling,* 331 F.3d 93 (2d Cir. 2003).  In ascertaining whether the Defendants are entitled to qualified immunity, the Court must look "to both 'the clarity of the law establishing the right allegedly violated' as well as

15

'whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood' that his actions were unlawful." *Hanrahan,* 331 F.3d at 98 (2d Cir. 2003) (quoting *Vega v. Miller,* 273 F.3d 460, 466 (2d Cir. 2001)).

Balanced against the desire "to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury" is the need "to hold responsible public officials exercising their power in a wholly unjustified manner." *Duamutef v. Hollins,* 297 F.3d 108, 111 (2d Cir. 2002).  Summary judgment for defendants on grounds of qualified immunity is therefore appropriate "only 'if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.' " *Williams v. Greifinger,* 97 F.3d 699, 703 (2d Cir.1996) (quoting *In re State Police Litig.,* 88 F.3d 111, 123 (2d Cir.1996)).

The Second Circuit has held that there is a clearly established rule that a prisoner has a right to a diet consistent with his or her religious scruples, *Kahane v. Carlson,* 527 F.2d 492 (2d Cir. 1975);  *see also Bass v. Coughlin,* 976 F.2d 98, 99 (2d Cir. 1992) ("The principle [*Kahane* ] established was not placed in any reasonable doubt by intervening Supreme Court rulings[.]"), and this circuit has also held it well established that a prisoner's free exercise right to participate in

religious services is not extinguished by his or her confinement in special housing or keeplock, *see Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir. 1993). Furthermore, this Circuit has explained that the finding of a clearly established rule is not to be so narrowly applied as to provide qualified immunity unless the courts have ruled in favor of a prisoner under precisely the same factual circumstance.  *See Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003).  To the contrary, this Circuit has explained that "prior cases make it sufficiently clear that absent a legitimate penological justification . . . prison officials' conduct in denying [the plaintiff] a feast imbued with religious import was unlawful."  *Id.*

To evaluate whether a right is clearly established, the court must determine whether it would be clear to a reasonable correctional official that his conduct in these circumstances was unlawful.  *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). The analysis focuses on cases from the Supreme Court and Second Circuit.  *See Williams v. Greifinger*, 97 F.3d 699, 706 (2d Cir. 1996).  The Second Circuit has held that the appropriate point of inquiry is not whether DOC officials correctly followed the advice of religious counselors but rather whether Mr. Vega's beliefs are sincerely held.  *See Ford. V. McGinnis*, 352 F.3d 582, 597-98 (2d Cir. 2003) (vacating and remanding summary judgment on prisoner's claim of a violation of his free exercise rights).  The *Ford* court further clarified that, while the opinions of ecclesiastical experts are informative, "the proper inquiry [is] always whether [the plaintiff's] belief was sincerely held and in his own scheme of things religious."  *Id.* at 598 (internal citations and emphasis omitted).

In this case, Mr. Vega has asserted in his complaint that the Defendants violated his constitutional rights by the prison's administration of the holiday food package program, as alleged in Count 2, identification of commissary items as "Halal," as alleged in Count 14, continued serving of non-Kosher, non-halal cheese on the common fare menu, as alleged in Count 15, and failure to clean rugs used for prayer, as alleged in Count 21. "[P]rior cases make it sufficiently clear that absent a legitimate penological justification . . . prison officials' conduct in denying [a plaintiff] a feast imbued with religious import was unlawful." *Id.* However, the appropriate point of inquiry is not whether DOC officials correctly followed the advice of religious counselors in determining whether a practice is prescribed by an inmate's religion, but rather whether the inmate's beliefs are sincerely held. *See Ford v. McGinnis*, 352 F.3d 582, 597-98 (2d Cir. 2003), (citing *Frazze v. Illinios Department of Employment Security,* 489 U.S. 929 (1989)) (vacating and remanding summary judgment on prisoner's claim of a violation of his 1st Amend. rights via refusal to serve religious feast in high-security area). The Plaintiff objects to the Defendants' qualified immunity argument on the grounds that he is entitled to a clean rug and space in which to practice his religion. He asserts that "qualified immunity is not a defense to Mr. Vega's claims for injunctive relief." [Dkt. 223-5, p. 33].

In viewing the evidence presented in the light most favorable to Mr. Vega and with all permissible inferences drawn in his favor, there is no question that Mr. Vega is a devout Muslim and that his beliefs are sincerely held. Furthermore, contrary to the Defendants' argument, he has clearly asserted his religious rituals

– the mandate for religiously sanctioned foods and the need to pray on a clean rug – and this Court would be remiss to interpret existing case law recognizing a right to pray in clean conditions and eat a diet consistent with his scripture more narrowly than simply that.  Therefore, there are clearly established rights asserted in this case.  The Defendants have not presented any evidence of a compelling interest which prevents them from accommodating Mr. Vega's religious observance nor have they presented any evidence that they reasonably accommodated him.   With respect to the Plaintiff's claims in Counts 15 and 21, the Court declines to find qualified immunity and DENIES the Defendants' motion for summary judgment.

However, there is no recognized right to the purchase of holiday food packages, as the Plaintiff claims in Count 2.  Inmates have no constitutional right to purchase items from the prison commissary.  *See Mitchell v. City of New York*, No. 10 Civ. 4121(PKC), 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011) (dismissing claims regarding commissary pricing and selection); *Davis v. Shaw*, No. 08 Civ. 364(NRB), 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009) (any claims regarding prison commissary do not rise to level of constitutional violation because inmates have no constitutional right to use prison commissary); *Torres v. Droun*, No. 01 Civ. 1844(DJS)(TPS), 2004 WL 721729, at *7 (D. Conn. Mar. 30, 2004) (no constitutional right to purchase items from prison commissary or outside vendor where it did not constitute an atypical and significant hardship).  Mr. Vega does not assert that his inability to purchase this item constitutes a substantial burden in the sense that they prevent him from practicing his religion.  Prison officials

19

are not required to provide every product which an inmate may want, but not need, in its commissary.  Deprivation is an inherent and unavoidable consequence of incarceration.  *Bell v. Wolfish,* 441 U.S. 520 (1979).  After considering all of the evidence in a light most favorable to the plaintiff, the Court DISMISSES Count 2 for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915.

The Court declines to award qualified immunity to the Defendants on the Plaintiff's remaining religious exercise claims.

e.  <u>COUNT 18</u>

Plaintiff alleges in Count 18 that the Defendants intercepted and opened an April 19, 2008 letter which he addressed and dispatched to his mother which led to the issuance of a disciplinary report charging Plaintiff with conspiracy to convey contraband.  Plaintiff alleges that the opening of this letter violated his First, Fifth, Eighth, and Fourteenth Amendment rights and his rights under the RLUIPA.  Under the strictures of 28 U.S.C. § 1915, the Plaintiff has failed to state a claim upon which this Court may grant relief.

While a prisoner has a right to be present when his legal mail is opened, *Wolff v. McDonnell,* 418 U.S. 539, 574-76 (1974), an isolated incident of mail tampering is usually insufficient to establish a constitutional violation.  *See Morgan v. Montanye,* 516 F.2d 1367, 1371 (2d Cir.1975); *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986).  Rather, the inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." *Cancel v.*

*Goord*, No. 00 CIV 2042 LMM., 2001 WL 303713, at *6 (S.D.N.Y. March 29, 2001) (citing *Washington,* 782 F.2d at 1139).

In *Washington,* the Second Circuit determined that as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received.  782 F.2d at 1139.  Following *Washington,* district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face.  *See, e.g., Cancel*, 2001 WL 303713, at *6 (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice); *John v. N.Y.C. Dep't of Corrections,* 183 F.Supp.2d 619, 629 (S.D.N.Y.2002) (requiring plaintiff to allege facts that show defendants acted with invidious intent and plaintiff was harmed by the interference); *Hudson,* No. 99 CIV. 12339(LAP), 2000 WL 1838324, at *5 (S.D.N.Y. Dec. 13, 2000) (holding same); *Johnson v. Morton,* No. 95 Civ. 949, 1996 WL 518078, at *1 (E.D.N.Y. Aug. 26, 1996) (noting that "[c]ourts have consistently applied *Morgan* [ *v. Montanye* ] to dismiss suits by inmates alleging unconstitutional opening of their legal mail without any showing of damages"); *see also Lewis v. Casey,* 518 U.S. 343, 351 (1996) (holding that inmate must establish actual injury, rather than "theoretical deficiency" with legal library or legal assistance program to state constitutional claim for interference with access to courts).

Furthermore, section 18-81-31(a) of the Regulations of the Connecticut State Agencies provides that "all outgoing general correspondence shall be subject to being read at the direction of the Unit Administrator . . . for either a specific inmate(s) or on a random basis if the Commissioner or Unit Administrator has reason to believe that such reading is generally necessary to further the substantial interests of security, order or rehabilitation."  This section further provides that outgoing correspondence may be "restricted, confiscated, returned to the inmate, retained for further investigation, referred for disciplinary proceedings or forwarded to law enforcement officials" if a review demonstrates that the correspondence contains or concerns, among other things, "[t]he transport of contraband in or out of the facility."

The Plaintiff claims only that one letter was tampered with on one occasion.  He does not allege an ongoing practice of mail tampering by DOC officials or, indeed, even more than one instance.  Plaintiff has thus admitted that there was no ongoing practice of mail interference.  Furthermore, the Plaintiff does not allege that his mother is an attorney or that by opening and re-interpreting the contents that he was unjustifiably censored or that his right to access of the courts was chilled.  Indeed, the contents of the letter are not legal in nature, and Connecticut law provides that outgoing inmate correspondence may be reviewed.  In fact, the letter asked his mother to purchase consumer items and to send one item to him in subversion of a prison directive or privilege, as discussed further below.  Therefore, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the

Court DISMISSES Count 18 for failure to state a claim on which relief may be granted.

      f.  <u>COUNT 19</u>

Plaintiff alleges in Count 19 that the Defendants erroneously issued him a disciplinary report for conspiracy to convey contraband – a claim he contends is undefined – based on a faulty reading of his April 19, 2008 letter to his mother, thus violating his rights.  Plaintiff's main contention supporting his claim is that no evidence supported a finding that he was guilty of conspiracy to convey contraband.  Plaintiff has failed to state a claim upon which relief may be granted, as the record amply demonstrates that the evidence supported a finding of guilty. This claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

In the three page letter to the Plaintiff's mother, the Plaintiff requests that his mother "[p]urchase 1 pound of oil," that she "try to get <u>16</u> plastic bottles of <u>1</u> oz, empty.  That's so we can fill them and pass out the donation."  The letter further requests that she contact the Imam of the Islamic Center from which Plaintiff desired that she acquire the oil to inform the Imam "that he must mail the oil [to the prison] as a donation from the Islamic Center."  [Dkt. 217-3, 4/19/08 Letter, pp. 15-18].  Plaintiff also included a prison authorization form regarding a wrist watch with his letter and requested that his mother "[t]ry to get a watch that is similar to the watch I had.  And try to get a <u>Guess</u> watch.  Do not have the store send the receipt with the watch.  You take the receipt.  O.K."  [*Id.*].  The November 1, 2006 authorization form Plaintiff included states:

> This inmate sent his watch to a store to be repaired with the
> approval of Capt. Frey.  This watch should be returned directly
> from the jewelry store.  In addition Capt. Frey has requested
> [illegible] informed upon the arrival of the watch in order to
> make arrangements for it to be inspected for contraband.
> Attached is a photo of the watch that was sent out.

[Dkt. 217-3, 11/1/06 Authorization, p. 26].  Section 18-81-51(c) of the Regulations

of the Connecticut State Agencies, applicable to the Department of Corrections,

defines "contraband" as "any property that is not authorized by the

Commissioner of Correction."  Clearly, the letter indicates that the Plaintiff

sought to misrepresent the new watch which he did not have permission to have

sent into the prison facility as the repaired watch which he did have permission to

have sent into the prison facility.  As Mr. Vega solicited the aid of his mother to

do so, he attempted to conspire with his mother to transmit contraband, that is,

goods or merchandise whose importation or possession is not permitted, into the

prison facility.

On April 21, 2008, Plaintiff was issued a Disciplinary Report for

"Contraband (conspiracy to convey)" based on the letter's request that Plaintiff's

mother purchase unauthorized oils to send to the prison, and his request that his

mother send him a new watch when he was authorized only to send an old watch

out for repair.  [Dkt. 217-3, 4/21/08 Disc. Report, pp. 7-8].  The Report concludes:

> The body of his letter clearly states for his mother to purchase
> a new watch and send it in as if the watch was a repair and
> returned.  This and the request for his mother to purchase Oil
> and have it sent in as a donation is a clear attempt to Convey
> Contraband into this Correctional Institution in violation of AD
> 9.5.

[*Id.*].

24

Officials have the right to establish rules and regulations for the orderly administration of prison facilities.  Indeed, the Second Circuit has noted that "[i]t is well established that challenges to prison policies are evaluated under a 'reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights' so as to account for the unique considerations relevant to orderly prison administration."  *Zargary v. City of New York*, 412 F. App'x 339, 341 (2d Cir. 2011) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).  Indeed, the "central objective of prison administration [is] safeguarding institutional security."  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."  *Bell*, 441 U.S. at 546.  "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Id.* at 545-46.  "The limitations on the exercise of [a prisoner's] constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security."  *O'Lone*, 482 U.S. at 348.  The Supreme Court has recently noted that "[p]olicies designed to keep contraband out of jails and prisons have been upheld in cases decided since" its ruling in *Bell v. Wolfish*, 441 U.S. 520 (1979).  *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1516 (2012).

Here, there is ample evidence supporting a guilty finding by prison officials that Mr. Vega's letter controverted the policy against contraband.  Mr. Vega's letter clearly requests that his mother purchase and mail to the institution items not approved by the prison; no evidence in the record indicates that Mr. Vega was authorized to receive a donation of oil, and the watch authorization form indicates that Mr. Vega was authorized only to receive back directly from a jewelry store a watch sent for repairs, not a new watch altogether.  Thus, his letter constitutes a patent subversion of the permission given to him by prison officials in violation of prison policy, which impairs the prison's inherent authority to secure the facility by controlling what comes in and out.

The Plaintiff has failed to establish that no evidence existed to find him guilty of attempting to convey contraband.  Conversely, the record indicates a patent violation.  Consequently, Count 19 is DISMISSED.

### g.  COUNT 15 AS IT RELATES TO THE 13TH AMENDMENT

Plaintiff claims in Count 15 that the Defendants continued to serve him non-Halal cheese after they had learned it was not Halal.  Although the Court declines to dismiss the bulk of this claim, which will proceed to trial, Plaintiff's claim that this issue constitutes a violation of the Thirteenth Amendment is untenable and must be dismissed.  The Thirteenth Amendment to the U.S. Constitution abolished slavery in this Country.  No fact or allegation in the Plaintiff's Amended Complaint or in the record in this case supports a finding that the Thirteenth Amendment has been violated by the Defendants' alleged provision of non-Halal cheese, nor can the Court conceive of any possible

manner in which this claim could constitute a Thirteenth Amendment violation. The Court therefore dismisses Count 15 pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) *only* as it relates to the Thirteenth Amendment.

### h. COUNTS 4, 23, AND 30

The Plaintiff alleges in Count 4 that his rights were violated when he was not permitted to purchase Islamic religious items, including a digital Quran, Islamic educational compact discs, perfumed incense, leather socks, Halal-certified lotions and toiletry items, a Qiblah compass, "Azhan Five daily Essential Prayers," and an Islamic male silver ring. [Dkt. 51, Am. Compl. ¶ 537]. Although Plaintiff includes the latter six categories of items in this Count, the Amended Complaint is devoid of any facts as to Vega's attempt to procure these items. In contrast, paragraph 385 of the Amended Complaint indicates that the Plaintiff filed a grievance on January 16, 2008 regarding denial of his request to purchase Islamic cds, which was denied and which denial Vega appealed. Paragraph 423 indicates that the Plaintiff filed a grievance on May 8, 2008 regarding the denial of his request to purchase a digital Quran. There is no indication in the Amended Complaint that Plaintiff has exhausted his administrative remedies as to any item listed in Count 4 *other than* the Islamic cds and the digital Quran. As discussed previously, the Plaintiff must exhaust his administrative remedies before bringing a claim in federal court. Here, Plaintiff neither indicates that he has exhausted his administrative remedies as to the bulk of these items nor includes any specific facts in his Amended Complaint regarding his deprivation of them. Therefore, Plaintiff has failed to state a claim on which this Court may grant relief and Count

4 must be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to all items *except the Islamic cds and the digital Quran*.

Plaintiff alleges in Count 23 that the Defendants retaliatorily "logged inaccurate and/or unreliable information in the Plaintiff's prison records denying him fairness in making determination(s) about the Plaintiff." [Dkt. 51, Am. Compl. ¶556]. In this Count the Plaintiff purports to incorporate each of the prior 555 paragraphs of his 244 page Amended Complaint. Count 23 does not specify what inaccurate information was logged, when it was logged, by whom it was logged, or how the erroneous information has harmed him, and Plaintiff refers to no specific incidents enumerated elsewhere in his Amended Complaint. This claim is entirely vague and the Court is at a loss to ascertain to what set of facts this claim pertains. Plaintiff also does not indicate whether he has contested the inclusion of allegedly erroneous information in his file, thereby demonstrating that he has exhausted his administrative remedies. Section 18-81-20(g) of the Regulations of the Connecticut State Agencies allows an inmate to contest the content of personal data records and to propose amendment of his records; there is no indication that Mr. Vega has done so.

Because this claim is entirely vague and lacking in factual support, and because the Plaintiff has not indicated that he has exhausted his administrative remedies in attempting to correct any erroneous information in his records, or has even alleged that he has a right to correct such information, this claim must be DISMISSED for lack of basis in law or fact, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). The Court can discern no basis upon which it may grant

relief for such a vague and unspecific claim as this, and can additionally not conclude that this claim is not frivolous.

Count 30 must be dismissed for similar reasons.  This Count alleges that the Defendants "systematically banned the freedom of expression in Rap Music (i.e. unedited Rap Music) without any legitimate reason(s)," thereby depriving the Plaintiff of his constitutional rights.  [Dkt. 51, Am. Comp. ¶ 563].  As with Count 23, the Plaintiff does not specify the factual basis upon which this claim rests or whether the Plaintiff has exhausted his administrative remedies.  Nor does he allege that other types of music are *not* censored, or the manner in or frequency with which unedited rap music is banned.  Indeed, this claim relates to *no* facts contained in the Plaintiff's 244 page complaint.

Moreover, even if Plaintiff has appropriately exhausted his administrative remedies, as discussed previously, prison officials may establish rules and regulations for the orderly administration of prison facilities, with the central goals of safeguarding institutional security and preserving internal order and discipline.  *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  A limitation on inmates' freedom to purchase and listen to uncensored rap music – which notoriously and often contains antiauthoritarian, violent, and inflammatory lyrics – in a combustible setting where inmates are housed in close quarters can hardly be deemed an unreasonable intrusion on inmates' constitutional rights.  Instead, lack of access to inflammatory music with the potential to fuel animosity furthers valid penological objectives.

The Court thus DISMISSES Count 30 for failure to state a claim on which relief may be granted, and for arguable frivolity, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  *See Betts v. McCaughtry*, 827 F. Supp. 1400, 1405 (W.D. Wis. 1993) *aff'd*, 19 F.3d 21 (7th Cir. 1994) (noting that regulation banning inflammatory rap music in prison furthered the "plausible, legitimate purpose" to "prevent materials that present a risk of violence," and holding that regulation was not racially discriminatory because impact on African-Americans was questionable); *Roque v. Warden, Connecticut Corr. Inst., Somers*, 181 Conn. 85, 99 (1980) (activity and literature likely to bring about eventual confrontation of prisoners and prison staff – here, writings "fraught with instigation to concerted activity in opposition to the system of government and authority under which the inmates were living" – "cannot be Countenanced in the prison setting").

i. <u>STATE LAW CLAIMS</u>

Most of Plaintiff's remaining causes of action contain allegations that the Defendants have violated the Plaintiff's rights under the Connecticut state constitution and state statutes.  With regard to Counts 13 and 21, however, the Plaintiff has failed to identify a specific state statute or state constitutional provision allegedly violated by the Defendants.  Absent identification of a state statute or constitutional provision providing rights under the facts asserted in the Amended Complaint in excess of those provided under the enumerated federal Constitutional provisions or federal statutes, the Court dismisses the state claims in the foregoing Counts as lacking a cognizable legal basis and for

failure to state a claim on which relief may be granted pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii).

Vega also purports to bring claims for violations of Conn. Gen. Stats. §§ 53-
517 (Fraudulent sale of kosher meat, meat products and other food) and 53-347a
(Prohibited acts relative to stamps, labels, trademarks, service marks, collective
marks and certification marks) in Count 14.  These statutes are criminal statutes
prescribing criminal penalties.  Mr. Vega is not a prosecuting authority; thus he
may not bring claims under these criminal statutes.  Claims under these two
statutes in Count 14 are thus DISMISSED.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' [217] Motion for Summary
Judgment is GRANTED in part and DENIED in part.  Summary judgment is
GRANTED in favor of Defendants as to Count 20 for Plaintiff's failure to exhaust
his administrative remedies.  Summary judgment is GRANTED in favor of
Defendants on all claims for monetary relief under the RLUIPA, as monetary
damages are not cognizable under that statute.  Counts 2 (purchase of holiday
food packages), 3 (unsanitary conditions of shared cell), 18 (mail tampering), 19
(issuance of disciplinary report for conspiracy to convey contraband), 23
(inaccurate information in prison records), and 30 (uncensored rap music) are
DISMISSED in their entirety pursuant to 28 U.S.C. § 1915.  Count 15 is DISMISSED
*only* as it relates to the Thirteenth Amendment.  Count 4 is DISMISSED as to all
items *except the Islamic cds and the digital Quran*.  The state law claims in
Counts 13 and 21 are DISMISSED.  The state law claims for violations of Conn.

31

Gen. Stats. §§ 53-517 and 53-347a in Count 14 are DISMISSED.  The Court DENIES Defendants' request for qualified immunity as to Counts 15 and 21.

The Clerk is directed to enter judgment in favor of the Defendants as to Counts 2, 3, 18, 19, 20, 23, and 30.

The following Counts are the sole remaining Counts in this action:

- <u>Count 4</u> (as to Islamic cds and digital Quran only), alleging violations of the First, Eighth, and Fourteenth Amendments and the RLUIPA, and violations of Conn. Gen. Stat. § 52-571b;

- <u>Count 10</u>, alleging violations of the First, Eighth, and Fourteenth Amendments and the RLUIPA, and violations of Conn. Gen. Stat. § 52-571b;

- <u>Count 13</u>, alleging violations of the First, Eighth, and Fourteenth Amendments and the RLUIPA;

- <u>Count 14</u>, alleging violations of the First, Eighth, and Fourteenth Amendments and the RLUIPA, and Conn. Gen. Stat. § 52-571b;

- <u>Count 15</u>, alleging violations of the First, Fifth, and Fourteenth Amendments and the RLUIPA; and

- <u>Count 21</u>, alleging violations of the First, Eighth, and Fourteenth Amendments and the RLUIPA.

Accordingly, all evidence which a party has proposed to offer which is relevant only to a claim which is no longer extant is irrelevant.  The parties are directed to examine all proposed witnesses and exhibits and to withdraw those which are no longer relevant.

**IT IS SO ORDERED.**


**_____/s/_____**
**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: December 4, 2013**